## Ex parte BEN BUGG.

Springfield Court of Appeals, April 1, 1912.

1. CRIMINAL LAW: Suspending Sentence: Enforcing Punishment After Unreasonable Delay. In a *habeas corpus* proceeding it appeared that the petitioner had been convicted of illegally selling liquor in two cases. In case No. 43 a fine was assessed and in case No. 54 a jail sentence. The petitioner was imprisoned in case No. 43 for failure to pay the fine, but at a subsequent term the court made an order suspending further punishment and defendant was permitted to leave the state. No such order was made in case No. 54. The petitioner left the state in April 1909 and on his return in November, 1911, he was imprisoned under a *capias* execution issued upon the judgment in case No. 54. *Held*, that the order of court releasing the petitioner was void and unwarranted in law. *Held, further*, that under the facts in this case it would be against a sound public policy to enforce the judgment of imprisonment after the lapse of so long a time, where defendant could not be blamed for the delay and after society could no longer have any interest in the enforcement of the sentence.

2. ————: ————: Courts: Usurping Pardoning Power. A trial court has no right in a criminal case to indefinitely suspend an execution after sentence, and judgment. To permit it to do so would be to usurp the pardoning power which it *does* not have.

3. ———: **Jail Sentence: Enforcing Punishment: Statute of Limitations.** There is no Statute of Limitations as to jail sentences. The law proceeds upon the theory that the protection of society requires that speedy as well as certain punishment shall be meted out to offenders and it is expected that after final judgment imposing a jail sentence, imprisonment shall begin at once, unless a stay of execution be granted, which cannot exceed ninety days, or that the prisoner be paroled.

4. ———: ———: ———: **Unreasonable Delay.** A mere delay in the infliction of the punishment assessed in a criminal case is not sufficient reason for relieving the convicted party from the consequences of a judgment against him, unless the delay has been so great that society could derive no good from its enforcement; but when such delay has occurred without the fault of the defendant, although with his consent, the judgment will not be enforced.

Original Proceeding by Writ of Habeas Corpus.

PETITIONER DISCHARGED.

*J. L. Van Wormer* for petitioner.

*Will H. D. Green,* Prosecuting Attorney, for State.

COX, J.—Petitioner is imprisoned in the Howell county jail at West Plains under a *capias* execution under a judgment of conviction in the Howell County Circuit Court upon a charge of illegally selling liquor and prosecutes this writ to secure his release contending that his imprisonment is illegal.

The facts connected with his imprisonment are as follows: At the December term 1908 of the Howell County Circuit Court and on January 18, 1909, petitioner was convicted in cases Nos. 43 and 54 on that docket upon the charge of illegally selling liquor. In case No. 43 a fine of $300 was assessed. In case No. 54 the punishment was fixed at six months in jail. Judgment in regular form was rendered in each case and petitioner then imprisoned in case No. 43 for failure to pay the fine and costs in that case. He remained in jail under this judgment until April 16, 1909, at

which time it was feared he was contracting tuberculosis and upon the advice of the county physician and the prosecuting attorney, the court, then in session, made an order for his release from jail as follows: "On this day upon recommendation of the prosecuting attorney and the certificate of the county physician, Doctor D. J. Nichols, it is ordered by the court that further punishment herein be suspended, that defendant may seek a change of climate." This order was made at a term subsequent to the one at which the conviction was had and judgment rendered. No order was made in case No. 54 in which a jail sentence of six months was imposed. On April 19, 1909 petitioner with his wife left West Plains to seek a change of climate and went to western Kansas where he remained until about Dec. 25, 1910, when he returned to West Plains and remained there until March 30, 1911, when he again went west. This time to California, where he remained until November 15, 1911, when he again returned to West Plains and engaged in assisting his father in the hotel business where he remained until February 23, 1912, at which date a *capias* execution was issued upon the judgment in case No. 54 imposing a jail sentence of six months and he was imprisoned under that execution and still remains in custody.

It is contended that the court had no power to order a suspension of the punishment adjudged against defendant and that the lapse of time now entitles him to a release. The right of a court to indefinitely suspend sentence after conviction or execution after judgment has been a source of much controversy in the courts and the authorities are anything but harmonious. The right of a court to indefinitely suspend sentence after conviction is upheld in New York, People ex rel. v. Court of Sessions, 141 N. Y. 288, 36 N. E. 386; Massachusetts, Com. v. Dowdican Bail, 115 Mass. 133; New Hampshire, Sylvester v. State, 20 Atl. 594; North

Carolina, State v. Crooke, 29 L. R. A. 260, 20 S. E. 513; New Jersey, State v. Addy, 43 N. J. L. 113, 39 Am. Rep. 547; Mississippi, Gibson v. State, 8 So. 329; California, People v. Patrick, 118 Cal. 332, 50 Pac. 425; Florida, Ex parte Williams, 8 So. 425. This power of the courts has been denied in Michigan, Weaver v. People, 33 Mich. 296; People v. Brown, 54 Mich. 15, 15 N. W. 571; Wisconsin, Re Webb, 27 L. R. A. 256; Georgia, Neal v. State, 42 L. R. A. 190, 30 S. E. 858; North Dakota, Re Markuson, 64 N. W. 939; Illinois, People ex rel. Smith v. Allen, 41 L. R. A. 473; Federal Court, United States v. Wilson, 46 Fed. 748, and in this State, State v. Hockett, 129 Mo. App. 639, 108 S. W. 599.

On the question of the power of the court to indefinitely suspend execution after sentence and judgment, the conflict is not so great. This power has been upheld in North Carolina, State v. Whitt, 23 S. E. 452, but the weight of authority seems to be largely against this proposition and to our mind it is clear in the absence of a statute authorizing it, to permit a court after judgment is pronounced to indefinitely postpone its execution is in effect to permit the court to usurp the pardoning power which is lodged elsewhere and cannot be upheld upon either reason or authority. [Re Webb, 89 Wis. 354, 27 L. R. A. 356; State v. Neal (Ga.), 42 L. R. A. 190; State v. Voss (Ia.), 8 L. R. A. 767.]

Our conclusion is that the order of the court in case No. 43 suspending further punishment therein was void and the release of the petitioner thereunder unwarranted in law. The rights of the petitioner are therefore to be determined without giving any consideration to the order of the court and he stands before this court exactly as he would if the sheriff had voluntarily released him without any order of the court. Viewing the case from this standpoint the first question which presents itself is whether in contemplation of law the sentence had been complied with. It has been held that when a jail sentence is imposed the date of

imprisonment begins on the day the sentence is pronounced and that after the lapse of the time for which imprisonment was imposed the prisoner has in legal effect served the sentence whether he has been confined in prison during the time or not. [Re Webb, 89 Wis. 354.] We are not disposed to follow that case. In the absence of some other statutory provision, the judgment of a court imposing a jail sentence can only be satisfied by a compliance with its terms. Neither the honest mistake nor the willful disregard of duty on the part of the officers whose duty it is to enforce the judgment can release the convicted party from its consequences. [State v. Neal (Ga.), 42 L. R. A. 190; Ex parte Vance, 90 Cal. 208, 13 L. R. A. 574.] The unauthorized release of petitioner from custody did not in any way operate to his advantage or to his disadvantage at the time. He was not technically in jail while he was, in fact, at liberty, and the lapse of the time after sentence for which he was adjudged to be confined in jail did not release him from liability to be retaken and required to serve the remainder of the time. The question then arises whether there should be any limit to the time within which a judgment may be enforced under such circumstances. If there is to be no limitation then a case might arise in which, years after the judgment had been pronounced, and possibly, after a man had reared a family and attained to a position of high standing in the community, he and his family might be humiliated and disgraced by the bringing to light of an old judgment long since forgotten and which, in all good conscience, ought never again to see the light of day. To say that under such circumstances a man should be cast into prison to satisfy an outraged law would be as absurd as to hold on the other hand that society could have no protection against the honest mistakes or willful neglect of the officers it commissions as the guardians of its welfare. In solving the problem before us we take it that we

are to be governed by a sound public policy which seeks only the public good and apply its precepts to the facts in this case. What the public policy of this state is on the question of the execution of judgments of conviction in criminal cases may, we think, be gathered from the general course of legislation touching that matter. Looking to these statutes we observe that while in civil cases there is a Statute of Limitations applying to the enforcement of judgments, we have no such statute in criminal cases, except that fines may be collected by civil process and in that way are brought under the limitations applying to civil judgments. But as to jail sentences, there is no Statute of Limitations. The reason for this is that the law proceeds upon the theory that the protection of society requires that speedy as well as certain punishment shall be meted out to offenders, and it is expected that after final judgment imposing a jail sentence imprisonment shall begin at once unless a stay of execution be granted, which cannot exceed ninety days (Sec. 5291, R. S. 1909), or the prisoner be paroled. This position is made clear by the provision of the statute, section 5261, which requires that the prisoner be present in court when sentence is pronounced, and section 5266 which requires the clerk of the court as soon as may be to make out and deliver to the sheriff of the county a transcript of the entry of such conviction and of the sentence thereupon, duly certified, and then requires the sheriff to execute the same accordingly. The purpose of these provisions is to require the service of the sentence to begin at once. The interests of both the defendant and society must be protected and while the defendant has guaranteed to him a speedy and fair trial, yet when he has been legally convicted and his punishment assessed, society cannot be deprived of the protection guaranteed to it by the speedy and certain punishment of offenders against its laws except

for some valid reason. We do not think that mere delay in the infliction of the punishment assessed is a sufficient reason for relieving the convicted party from the consequences of a judgment against him unless the delay has been so great that society could derive no good from its enforcement, but when such delay has occurred without the fault of defendant, although with his consent, we should have no hesitancy in refusing to enforce the judgment. The criminal laws of this state are not based upon any idea of retaliation against the offender for the wrong he has done, but punishments are inflicted solely for the protection of society and when the execution has, without the fault of defendant, been so long delayed that society can no longer have any interest in its enforcement there would seem to be no good reason why its enforcement should be insisted upon. The principle here announced is supported in the following cases: State v. Snyder, 98 Mo. 555, 12 S. W. 369; People ex rel. Smith v. Allen (Ill.), 41 L. R. A. 473; People v. Barrett, 202 Ill. 287, 63 L. R. A. 82. It may be said that this leaves the state and society at the mercy of a derelict official who might for sinister reasons refuse to perform his duty after the court had pronounced the judgment. But not so. If any officer should neglect or refuse to do his duty, he may be compelled by mandamus to perform it. [State v. Snyder, supra.]

Applying the principles herein enunciated to the facts of this case we are of the opinion that no good purpose can be subserved by the longer incarceration of this petitioner. At the time of his release, almost three years ago, he was thought to be contracting a dangerous disease, and while the action of the officers in releasing him from prison was without legal authority, yet, they were actuated by the highest possible motive in doing so and after this great lapse of time, most of which was spent by petitioner outside the state in quest of health, it would seem that the state should be bound

and not be permitted to further imprison the petitioner. We do not mean to be understood as holding that the lapse of three years or any specific time should be sufficient or be required in all cases to bar the enforcement of a judgment similar to this one, but each case should rest upon its own peculiar facts and such course followed as will best promote the ends of justice. The fine assessed may yet be collected in the same manner as if it were a judgment in a civil case. [R. S. 1909, sec. 5280.] The petitioner is discharged. All concur.