## EX PARTE HARRY B. JACOBS, Petitioner; JOHN S. CRAWFORD, Respondent.

In Banc, May 13, 1925.

1. **PAROLE: Conditions Fixed by Governor.** The Constitution invests the Governor with power to fix the conditions upon which he paroles a convict. All the power the General Assembly has in the matter is to legislate concerning the manner of applying for paroles.

2. ————: ————: **Upon Breach to Serve Remainder of Term.** Where the Governor paroled petitioner upon condition that if he failed to meet its various conditions or upon order of the Governor "he may be arrested and returned to the penitentiary, there to serve out the remainder' of his sentence," he accepted the conditions imposed, and upon revocation of the parole he is not entitled to have deducted from his term of sentence the time he was at large under his parole—there being no statute lessening the conditions imposed by the Governor.

3. ————: **Time Elapsed While at Liberty.** Where a convict was paroled by the Governor upon condition that if he failed to meet its conditions he could be arrested and returned to the penitentiary, "there to serve out the remainder of his sentence," and his parole was afterwards revoked, and subsequently he was arrested and returned to the penitentiary, he is not entitled to credit upon his term

(302)

Ex parte Jacobs v. Crawford.

for the time which elapsed between the granting and revocation of his parole, but he can be discharged only when he has served, in the manner prescribed by statute, the balance of the term for which he was sentenced that remained unserved on the day the parole was granted—there being no statute allowing him credit for such elapsed time.

4. ———: ———: **Three-fourths Rule: Commutation.** Where the express condition of petitioner's parole was that if he failed to observe its conditions or the Governor ordered his arrest he should "serve out the remainder of his term" and the order specified that he was "granted a commutation of sentence for the purpose of parole, without the benefit of the three-fourths law," his term was not lessening from day to day as he continued to observe the contions of his parole while remaining at large thereunder, but it was a fixed term, not subject to diminution during the existence of the parole. The meaning was that, without waiting for the application of the three-fourths law, the remainder of the sentence was conditionally commuted or wiped out as of the date the parole was granted; if he observed the conditions, there would be no remainder of his sentence to be served; but as he did not observe it, the commutation failed, and the balance of the term of sentence unserved when the parole was granted revived and must be served, subject to the terms of the three-fourths law.

Citations to Headnotes: Headnote 1: Pardons, 29 Cyc. p. 1570. Headnote 2: Criminal Law, 16 C. J. sec. 3233 (Anno); Pardons, 29 Cyc. p. 1572. Headnote 3: Criminal Law, 16 C. J. sec. 3233 (Anno); Pardons, 29 Cyc. p. 1572. Headnote 4: Pardons, 29 Cyc. p. 1570.

## *Habeas Corpus.*

WRIT DISCHARGED AND PETITIONER REMANDED.

*David W. Peters* for petitioner.

*Robert W. Otto,* Attorney-General, and *J. Henry Caruthers,* Assistant Attorney-General, for respondent.

DAVID E. BLAIR, J.—Petitioner seeks to be discharged from the penitentiary of this State. At the time our writ issued respondent was warden of the Missouri State Penitentiary and then had petitioner in his custody. Respondent has filed his return.

The facts are admitted. Petitioner pleaded guilty in Jackson County to the crime of robbery and his punishment was assessed at imprisonment in the State Penitentiary for ten years, from July 15, 1914. He was de-

livered to the warden of the penitentiary and began serving his sentence. On September 6, 1916, he was paroled by Governor Major upon certain conditions. He had then served 2 *years, 1 month, 21 days,* of his term. On November 20, 1917, petitioner's parole was revoked by Governor Gardner. The elapsed time between the date of his parole and the revocation thereof was *1 year, 2 months, 14 days.*

Although it is of no great importance here, it appears that petitioner was an inmate of the Michigan penitentiary at the time his parole was revoked and could not be brought back to Missouri at once. The important fact is that he was not returned to the Missouri penitentiary, in pursuance of the revocation of his parole, until October 18, 1919. At that time and since the date of his discharge under Governor Major's parole, petitioner had been away from the Missouri penitentiary for a period of *3 years, 1 month, 12 days.* It further appears that, for various infractions of the rules of the Missouri penitentiary, *80 days* of petitioner's accrued "good time" were taken away by the Missouri prison authorities.

One condition of petitioner's parole was that, if petitioner failed to meet the various conditions or upon order of the Governor, "he may be arrested and returned to the penitentiary, there to serve out the remainder of his sentence." Petitioner contends that the time he was out upon parole until such parole was revoked, or 1 year, 2 months and 14 days of time, should be deducted from the "remainder of his sentence" and that such allowance, plus the benefit of the three-fourths law, less 80 days deducted from good time, entitled petitioner to his discharge several months before he filed his petition for our writ of *habeas corpus.* It may readily be seen that if petitioner is correct in both contentions, he was entitled to his discharge at the time he filed his petition.

On the other hand, if petitioner is not entitled to have credited on his term of imprisonment the time

Ex parte Jacobs v. Crawford.

elapsed between the granting and the revocation of his parole (1 year, 2 months, 14 days), he was not entitled to his discharge when he filed his petition, nor is he now entitled to his discharge, even though he be entitled to the benefit of the three-fourths law.

In reaching this conclusion, we have made the following calculation:

|  | Year | Month | Day |
|---|---|---|---|
| Date of parole, | 1916 | 9 | 6 |
| Term of imprisonment began | 1914 | 7 | 15 |
| Time then served therefore was | 2 | 1 | 21 |
| Original sentence, | 10 | 0 | 0 |
| Less time served, | 2 | 1 | 21 |
| Unserved portion of sentence, | 7 | 10 | 9 |
| Less benefit of ¾ law for entire 10 year term on the assumption that petitioner is entitled thereto, | 2 | 6 | 0 · |
| Balance of term to be served, | 5 | 4 | 9 |
| Plus good time lost (80 days) |  | 2 | 20 |
| Balance of term, without considering time elapsed from granting parole to revocation thereof, | 5 | 6 | 29 |
| Date petitioner was returned to the penitentiary, | 1919 | 10 | 18 |
| Plus balance of the term thus found, | 5 | 6 | 29 |
| Assumed date of discharge, | 1925 | 5 | 17 |

It will thus be seen that, *if petitioner is not entitled to credit upon his term the elapsed time between the granting and the revocation of his parole,* he would not be entitled to be discharged until May 17, 1925, even if he be entitled to the benefit of the three-fourth law, provided no other reasons exist under proper prison rules, why he should not then be discharged. The question to be determined then is whether petitioner is entitled to credit for *1 year, 2 months, 14 days,* of time elapsed from the date of his parole until the same was revoked.

The power of the Governor in respect to pardons and paroles is declared in Section 8, Article V, of our Constitution. The first sentence of said section reads as follows: "The Governor shall have power to grant reprieves, commutations and pardons, after conviction, for all offenses, except treason and cases of impeachment, upon such condition and with such restrictions and lim-

308 Mo. Sup.—20.

itations as he may think proper, subject to such regulations as may be provided by law relative to the manner of applying for pardons.''

It will thus be seen that the Governor has the right to fix the conditions when he paroles a convicted person. All the power that the General Assembly has in the matter is to legislate concerning the manner of applying for pardons. Section 4144, Revised Statutes 1919, merely reiterates the language of the Constitution concerning the power of the Governor to grant pardons upon such conditions and under such restrictions as he may think proper.

In a very recent case (In Matter of the Petition of Jasper Mounce for Writ of Habeas Corpus, 307 Mo. 40, decided February 2, 1925), where this court had under consideration the effect upon the term of imprisonment of time elapsed while defendant was out under parole by the trial court, we said:

''A parole is a matter of grace or favor to a convicted defendant and, when he accepts such parole, he does it subject to all the provisions fixed by the statute and subject to all other conditions which may be imposed upon him by the authority granting such parole, which are not illegal, immoral or impossible of performance. Such, by all the authorities, is the rule where a parole or conditional pardon has been granted by the executive or other constitutional pardoning power and the rule applies as fully and as reasonably to paroles by trial courts under our statute.''

Such being the latest and controlling utterance of this court and such being our constitutional and statutory provisions, it would appear to be unnecessary to consider the authorities from other states cited in the suggestions filed by counsel in this case. No statute has been cited which provides that the time during which a convict is at large under a parole by the Governor shall be deducted from his sentence, in case such parole is revoked; nor is there any statute providing that such time shall not be deducted from such term of imprisonment. The Governor was therefore free to impose his own conditions.

When Governor Major paroled petitioner, it was upon the express condition that if petitioner failed to observe the conditions of his parole or the Governor ordered his arrest and return to the penitentiary, petitioner should "serve out the remainder of his sentence." Was such remainder a term lessening from day to day, as petitioner continued to observe the conditions of his parole while remaining at large thereunder, or was it a fixed term? That it was intended to be a fixed term, not subject to diminution during the existence of the parole, is apparent from the fact that it was specified in the order granting the parole that petitioner was "granted a commutation of sentence for the purpose of parole, without the benefit of the three-fourths law." That simply meant that without waiting for the application of the three-fourths law, the remainder of petitioner's sentence was conditionally commuted or wiped out, as of that date. There was therefore no remainder of his sentence to be served, if he observed the conditions of his parole. The term fixed for the expiration of petitioner's parole was January 1, 1919, as provided in the order paroling him. The term of ten years' imprisonment was commuted to the time already served, plus a parole, until January 1, 1919. Had the term not been commuted it would not have expired, solely under the application of the three-fourths law, until January 15, 1922. The penalty for failure to observe the conditions of the parole was that petitioner should serve the remainder of his sentence, which in effect meant that, the order commuting his sentence being conditional, it could be set aside and the then existing remainder of the sentence must be served.

It is apparent that the Governor intended to impose, as one of the conditions of the parole, that the full unexpired sentence of petitioner should hang over him as a "Sword of Damocles" to keep him faithful to the end of the period of parole. If the unexpired sentence conditionally commuted lessens from day to day while a paroled convict is at large under parole, one of the very

greatest inducements to persuade such convict to remain a law-abiding citizen becomes less of an inducement from day to day, and he may arrive at a point where he will calculate supposed *benefits* accruing from his failure to remain a law-abiding citizen against the diminishing *penalty* for failure to live such a life.

We think that Governor Major undoubtedly intended to impose no such daily weakening restraint. Petitioner was not entitled to a parole as a matter of right. The granting thereof was a matter of grace upon the part of the Governor. Petitioner accepted it, burdened with the condition that, if he did not keep his parole, it might be revoked and that he would be compelled to "serve out the remainder of his sentence." Such condition was neither illegal, immoral nor impossible of performance. The condition was stated in the order granting the parole and petitioner is bound thereby.

Having failed to observe the conditions of his parole, petitioner was arrested and returned to the penitentiary to serve out the remainder of his sentence. As the remainder of such sentence has not been served because petitioner is not entitled to have the time that he was at large under his parole and prior to its revocation deducted from the remainder of his sentence, his imprisonment was legal when our writ was issued and has not since become illegal.

As petitioner was not and is not now entitled to his discharge under the operation of the three-fourths law, it is unnecessary, and indeed it is improper, to consider what rights petitioner may have under said law.

It is ordered that petitioner be remanded to the custody of the Warden of the State Penitentiary to be dealt with in accordance to law, under the terms of the commitment under which he is now being held by said warden. All concur.