(No. 29252.—

THE PEOPLE *ex rel.* Selma Kelly, on behalf of William F. Krell, Petitioner, *vs.* JOSEPH E. RAGEN, Warden, Respondent.

*Opinion filed January 23, 1946.*

424

GEORGE W. SPRENGER, of Peoria, for petitioner.

GEORGE F. BARRETT, Attorney General, (WILLIAM C. WINES, of Chicago, of counsel,) for respondent.

Mr. JUSTICE MURPHY delivered the opinion of the court:

At the preceding September term of court we granted William F. Krell leave to file a petition for writ of *habeas corpus*. He is confined in the Illinois State Penitentiary at Joliet and the warden of that prison is respondent.

The facts set forth in the answer of the warden and Krell's reply thereto·show ·the following: Krell was indicted in November, 1920, in the criminal court of Cook county for the crime of robbery while armed with, a gun. On a trial by jury he was found guilty and on January 15, 1921, was committed to the State penitentiary for a term of years not to exceed the maximum fixed by statute. The statutory penalty for the crime charged at that time was not less than ten years or for life. (Hurd's Ill. Rev. Stat. 1921, chap. 38, par. 246.) Krell entered the penitentiary

and commenced service of said sentence immediately after his commitment and was detained there until January 23, 1922, when he was released under the circumstances hereinafter shown. A writ of error was sued out of this court to review the record of his conviction. The cause was submitted on the common-law record and on December 22, 1921, the judgment was affirmed. (*People* v. *Krell,* 300 Ill. 390.) On January 6, 1922, the mandate of this court affirming the judgment was issued and filed in the criminal court of Cook county. Four days thereafter the clerk of the criminal court delivered a certified copy of such mandate to the warden of the penitentiary. On the twenty-third day of January, 1922, an order was entered by one of the justices of this court which was as follows: "The warden will release the said William F. Krell on bail from further detention under the conviction above mentioned upon receipt of a copy thereof certified by the clerk of the Supreme Court of Illinois." In connection with the entering of said order, Krell gave bail in the sum of $6000 with sureties. The recital of facts in the bail bond contained, among other things, a reference to this court's affirmance of the trial court judgment and noted that a writ of error had issued out of the Supreme Court of the United States for a further review of the judgment of conviction. It was stated in the bail bond that the citation thereon had been served and that the justice issuing the order had ordered that "said writ of error [from the Supreme Court of the United States] be made a *supersedeas* and that said principal be admitted to bail." The condition set forth in the bail bond was that Krell would prosecute the writ to the United States Supreme Court with effect and abide by the orders of that court or any of the justices thereof and, moreover, would appear at the next term of the criminal court of Cook county and at each subsequent term until the determination of said writ of error, that he would not depart the court without leave

and "in case the judgment of the Supreme Court of Illinois is affirmed, will surrender himself to the warden of the Illinois state penitentiary at Joliet, from whose custody he is bailed."

It appears by the answer of the warden that Krell failed to file a proper transcript of record in the Supreme Court of the United States and on January 24, 1923, that court entered an order dismissing the cause. On May 2, following, a mandate was filed in this court and on May 7, the clerk of this court issued the further mandate to the criminal court of Cook county. Krell did not thereafter surrender to the warden nor was default entered on his bail bond. No action appears to have been taken to return Krell to the penitentiary until February 20, 1939. On the latter date, the clerk of the criminal court issued a certified copy of the original *mittimus* and within a few days he was returned to prison where he has since been detained serving the sentence imposed by the judgment of January 15, 1921.

It is contended that the long lapse of time—approximately twelve years and one month—between Krell's release from prison and his reincarceration has rendered his further detention in prison unlawful. To negative any claim that Krell was a fugitive from justice during such period, which it was evidently thought would place his case in a different category, he sets forth facts in his reply showing that of the twelve years and one month he was out of the Illinois prison he was in Cook county on two different periods, the first from January 2, 1925, to May 1, 1927, twenty days of which he was in the custody of the police officers, and the second from November, 1929, to September 2, 1932, during which he served a term of one year in the Cook county jail and one year in the house of correction. It appears from the answer of the respondent that the greater part of the remainder of the twelve

years and one month during which he was out of the Illinois prison, he was confined in the State prisons of Kentucky, Nebraska and Michigan, serving sentences of varying lengths. Under the facts, this cause will be considered on the basis that Krell was within the State's jurisdiction a part of the time that he was out of the Illinois prison and that it was sufficient to have enabled the officers charged with the duty of returning him to prison to have caused his reincarceration if they had exercised reasonable diligence.

The order of January 23, 1922, entered by a justice of this court, caused the warden of the penitentiary to release Krell from prison but it did not change the judgment or release him from serving the remainder of the penalty imposed. It had the effect of staying the operation of the mandate and temporarily suspending the *mittimus*, (*People ex rel. Finn* v. *David*, 328 Ill. 230,) but when the judgment of affirmance was sustained by the United States Supreme Court, the litigation was at an end and, if Krell had fulfilled the obligation of his bail and the condition upon which he was released from prison, he would have surrendered to the prison authorities. The part of the penalty not served remained in full force and effect and could not be satisfied except by actual imprisonment or by act of some legal authority. *People ex rel. Barrett* v. *Dixon,* 387 Ill. 420; *People ex rel. Ross* v. *Becker,* 382 Ill. 404; *Purdue* v. *Ragen,* 375 Ill. 98.

The contention that the failure of the officers of the law to return Krell to prison excuses him from serving the remainder of the term overlooks the fact that Krell initiated the move which produced his release from prison and that after the cause had been determined in the United States Supreme Court he acquiesced in further delay of his return by not surrendering to the warden. Under such circumstances he is in no position to say that service of the sentence is at an end, for to do so would be to permit him

to be released from completing the sentence by reason of his own wrongful act. *Volker* v. *McDonald,* 120 Neb. 508, 233 N.W. 890, also cases in annotation, 72 A.L.R. 1271.

There is a class of cases upon which Krell relies which holds that after a defendant has been found guilty or pleaded guilty to a criminal offense, the court loses jurisdiction unless judgment is pronounced and penalty imposed within a reasonable time after conviction. What is a reasonable time is dependent upon matters that are pending before the court and is limited to such period as may be necessary for the court to dispose of motions for a new trial, in arrest of judgment, or for other good cause. (*People ex rel. Powers* v. *Shattuck,* 274 Ill. 491; *People ex rel. Boenert* v. *Barrett,* 202 Ill. 287; *People ex rel. Smith,* v. *Allen,* 155 Ill. 61.) In the *Shattuck case,* defendant had been found guilty and a judgment was entered which included a penalty of a fine and imprisonment. Immediately after such judgment was entered defendant moved that it be vacated. The court did not pass on such motion for six years, then overruled the same. It was held that delay for such period in ruling on the motion to vacate was the same as though there had been a delay of six years in pronouncing judgment. It is clear that such cases are distinguishable from the instant case on the facts. In this case there was no delay on the part of the courts except that which was necessary to dispose of the various appeals. When these ended the judgment was conclusive and, as previously stated, the unserved part of the penalty remained in full force and effect. The court had no power to release defendant from serving such penalty. That was within the power of another branch of government.

It is ordered that the writ be quashed, and that the prisoner be remanded to the custody of the warden.

*Prisoner remanded.*