JOHN WEBER, SR., Petitioner, v. ARTHUR C. MOSLEY, Sheriff of the County of St. Louis, Missouri, Respondent.—242 S. W. 2d 273.

St. Louis Court of Appeals. Opinion filed September 11, 1951.

728

HOUSER, C.—This is an original proceeding under the Habeas Corpus Act. On July 14, 1951 the petitioner, a prisoner in the common jail of St. Louis County, filed in this court his petition, whereupon our writ promptly issued, returnable July 16. Petitioner's custodian, Sheriff Arthur C. Mosley, filed his return; petitioner filed an answer to the sheriff's return; the hearing was held on July 16, and while the case has been under advisement petitioner has been at liberty under a habeas corpus bond.

The petition charged unlawful deprivation of the liberty of John Weber, Sr. arising out of these facts: Conviction of a misdemeanor on March 29, 1950 in a Magistrate Court in St. Louis County; sentence to six months in jail; issuance of a commitment to jail; release from custody by the sheriff's office on March 29, 1950; and confinement on July 12, 1951 upon the commitment dated March 29, 1950.

The sheriff's return sought to justify the detention by virtue of the following commitment issued to him by the magistrate:

"COMMITMENT AFTER JAIL SENTENCE

"STATE OF MISSOURI  } ss
  COUNTY OF ST. LOUIS  }

"IN THE MAGISTRATE COURT OF JOSEPH H. GARRETT
    OF ST. LOUIS COUNTY, MISSOURI  First District

"STATE OF MISSOURI,    Plaintiff,

          vs.                  No. 3261

"JOHN A. WEBER Sr.,    Defendant.

"STATE OF MISSOURI TO THE JAILER OF THE COUNTY
OF ST. LOUIS.

"WHEREAS, the above named defendant John A. Weber Sr. has heretofore been charged in and with this Court with the offense of Non-Support; and

"WHEREAS, John A. Weber Sr. (b) the said defendant being duly and lawfully tried in this Court, was found to be guilty as charged in the information against him, and

"WHEREAS, this Court has duly pronounced sentence and rendered judgment against the said defendant, in accordance with law, that he be confined in the county jail of said county for a term of Six months and that he pay the costs in this action taxed at the Circuit Clerk's Office, St. Louis County, Mo.

"THESE ARE THEREFORE TO COMMAND YOU, that you receive the body of the said defendant in the jail of said county, and there safely keep him in your custody for the same term of Six months and until said costs are fully paid, or until he be discharged by due course of law.

"WITNESS the Honorable Joseph H. Garrett, Judge of said Magistrate Court, and the seal thereof.

"Given under my hand this 29th day of March, 1950.

"(signed)  Joseph H. Garrett
Magistrate

"(signed)  Joseph J. Henke
Clerk"

(REVERSE SIDE):
"Constable's Return

"I hereby Certify, that I executed the within writ in the County of St. Louis Missouri, this 29th day of March, 1950, by delivering the body of the within named John A. Weber Sr. to the Jailer of St. Louis County, as commanded.

| Fee | $1.00 | "(signed) R. H. Baumer |
|-----|-------|------------------------|
| Mileage | 2.00 | Constable |
| | — | "(signed) by R. Law & P. Naumann |
| Total | $3.00 | Deputy" |

Petitioner's answer to the sheriff's return was a general denial coupled with an adoption by reference to the agreed statement of facts, an allegation that the commitment is null and void and that the magistrate does not have jurisdiction over the petitioner, and a charge of illegal detention.

The agreed statement of facts follows:

"On the 29th day of March, 1950, Petitioner was brought before the Magistrate of the First District, St. Louis County, Missouri, in Cause No. 3261 entitled 'State of Missouri v. John Weber, Sr', being a charge of non-support of two minor children, whereupon a plea of not guilty was entered, a trial had by the Court without Jury, and a judgment entered finding the Petitioner guilty of the offense charged; whereupon, and on said day, the Magistrate passed sentence upon your Petitioner assessing his punishment at confinement in the Common Jail of St. Louis

County, Missouri, for a term of six (6) months, and that he pay the costs of the prosecution. The said Magistrate on the same day issued a commitment of the Petitioner to the Common Jail of St. Louis County, Missouri. While awaiting transportation to the Jail, Petitioner stated to the First District Constable Rudie Baumer that he wanted to appeal the Court's findings, but did not mention such intention to the said Magistrate or the Magistrate's Clerks. Shortly thereafter and on March 29, 1950, Petitioner was transported to the St. Louis County Sheriff's Office in the custody of Deputy Constable R. Law, where Constable Law told Deputy Sheriff Arthur Mann, the 'booking' officer, that the Petitioner was taking an appeal and therefore to hold the Petitioner to await a bondsman. Later the same day the Petitioner's bondsman appeared and a Recognizance Bond in the penal sum of $1,000.00 was executed by Petitioner and his sureties and the Petitioner was allowed to depart. It is admitted that no Affidavit of Appeal or other formal application for appeal was ever executed and submitted by Petitioner. On the 12th day of July, 1951, the Petitioner, having heard that the Sheriff of St. Louis County, Missouri, wanted him, surrendered himself to custody, since which date the Petitioner has been in confinement in the Common Jail of St. Louis County, Missouri. It is admitted that Petitioner was at large, free from custody, from the evening of March 29, 1950, to the morning of July 12, 1951.''

Petitioner contends that where a defendant in a criminal case is sentenced by a magistrate to a jail term and a commitment issues, but through an error of the county officials execution of the commitment is deferred indefinitely, the sentence should not be executed; that the courts look with extreme disfavor upon any uncertainty in the infliction or the time of punishment following a conviction; that a prisoner is entitled to know immediately upon a finding of guilt ''what his punishment is and when he will have paid his debt and be a free member of society''; that to allow a sheriff to enforce a judgment of conviction at any time at his will would place a harsh weapon in the hands of law enforcement officials which could be used to force compliance with unreasonable demands upon prisoners; that the purpose of punishment is not retribution, but for the benefit of society; that no useful purpose could be served by demanding retribution long after conviction for a long since forgotten offense.

In support of these contentions petitioner cites three cases in habeas corpus, Ex parte Bugg, 163 Mo.App. 44, 145 S.W. 831; Ex Parte Perse, 220 Mo.App. 406, 286 S.W. 733; Ex parte Brown, Mo.App., 297 S.W. 445, and three cases brought up for review on writs of error, State v. Hockett, 129 Mo.App. 639, 108 S.W. 599; State v. Dibert, Mo.App., 108 S.W. 600; State v. Jacobs, Mo.App., 108 S.W. 601.

In the first three cases, after conviction and passing sentence, the sentencing court made an order suspending or staying the execution of the-sentence ·for a period of time, after the expiration of which an effort was made to enforce the original sentence. In the Bugg case, supra, the general rule is clearly announced as follows, loc.cit. 832:

"In the absence of some other statutory provision, the judgment of a court imposing a jail sentence can only be satisfied by a compliance with its terms. Neither the honest mistake nor the willful disregard of 'duty on the part of the officers whose duty it is to enforce the judgment can release the convicted party from its consequences. * * * (Petitioner) was not technically in jail while he was in fact, at liberty, and the lapse of the time after sentence for which he was adjudged to be confined in jail did not release him from liability to be retaken and required to serve the remainder of the time."

The rule is then departed from in this language, loc. cit. 833:

"* * * unless the delay has been so great that society could derive no good from its enforcement."

The Bugg case holds that delay in the infliction of punishment occasioned by the sentencing court itself may bar enforcement of a criminal judgment, on the· theory that criminal laws are not based upon the idea of retaliation; that punishment is inflicted solely for the protection of society "and when the execution has, without fault of the defendant, been so long delayed that society can no longer have any interest in its enforcement, there would seem to be no good reason why its enforcement should be insisted upon."

In the Perse case, supra, the defendant was convicted by a justice of the peace and sentenced to six months in jail. The court granted defendant a stay of execution for 90 days. At the end of 90 days a commitment was issued for the six month period. The appellate court would not hold that the commitment was void, as defendant contended, but did hold that the defendant should be released at the end of the period of six months following the date of sentence; that the justice had no power to grant a stay of execution; that it was the duty of the justice to issue the commitment immediately; that the time of defendant's sentence to jail began immediately; that defendant was entitled to the benefit of the time from the 'date of judgment, and upon the expiration of six months from the date of judgment he should be released no matter when the commitment issued.

In the Brown case, supra, the defendant was convicted in circuit court and fined $100. In default of payment of fine and costs he was jailed. After some six days in jail the prisoner applied for and was granted release from jail by order of the court, which stayed execution for 90 days. Approximately 10 months later he was arrested and recommitted to jail to serve out the balance of his fine and costs. The appellate court held that the stay was void under the then

existing laws; that the court had no power to suspend indefinitely the sentence after conviction. Citing and following the Bugg case the court discharged the prisoner.

In the last three cases cited by petitioner, supra, after a finding of guilt but before sentence was passed the prosecuting officials and the defendants agreed that the assessment of punishment be referred to some future date and the defendants were allowed to depart without bail. About six months later defendants were brought into court and sentenced. These cases hold that the convicting court has no power to suspend the passing of sentence indefinitely; that by passing the cases over indefinitely after plea of guilty the court *lost jurisdiction* to impose sentence thereafter; that it is an exercise of the pardoning power to withhold the sentence which the law imposes, a power which is granted to another department of government. On principle it is difficult, indeed impossible, to hold that the Magistrate Court of St. Louis County lost jurisdiction to enforce its judgment in the case at bar simply because a subordinate ministerial law enforcement officer, unbeknownst to the magistrate court or clerk, failed to obey its command, especially where that disobedience was induced by the representation of the prisoner that he ''wanted to appeal the Court's findings.''

In none of the six cases cited by petitioner was the delay caused by a law enforcement officer charged with the ministerial duty of executing the judgment of the court. In all of them the delay resulted from the act of the court itself suspending or staying the execution of its own sentence. If these cases establish the principle that the court loses the power to carry out its judgments after the expiration of a certain length of time where it erroneously stays its own hand, such a ruling ought not be a precedent for a rule which would take away the power of a competent court of criminal jurisdiction to enforce its judgments where, unknown to the court, its mandate of execution improperly has been interfered with and nullified by the intermeddling of a deputy sheriff. In the case at bar the delay was occasioned by the mistake, negligence or wilful disregard of duty on the part of the deputy constable and/or deputy sheriff. As far as we can tell from the agreed statement of facts the sentencing magistrate had no knowledge that the execution of the judgment had been interfered with by the act of any subordinate law enforcement officer.

Certainly there are instances in the law where interruption in the execution of sentence suspends, but does not bar, the subsequent execution of the sentence. The most obvious example is the case where a prisoner breaks jail and escapes. When he is apprehended and returned to jail he must ''take up where he left off'' and serve the entire balance of his term. Likewise, where a convicted person takes the necessary steps to appeal, the execution of sentence is suspended

and the passage of time is no bar to the later enforcement of the judgment after affirmance of the conviction by the appellate court. Another example: where a parole is granted and later revoked. In that event it is held that the term of imprisonment is not reduced by the amount of time which would have been spent in prison had no parole been granted. The convicted person must serve the entire sentence. Ex parte Mounce, 307 Mo. 40, 269 S.W. 385; Jacobs v. Crawford, 308 Mo. 302, 272 S.W. 931. Another interruption occurring between sentence and execution which is held not to satisfy the sentence appears in the case of Jackson v. Kaiser, 353 Mo. 919, 185 S.W. 2d 784. Petitioner in habeas corpus was convicted and sentenced to 5 years in the state penitentiary by a circuit court on December 6. On December 7 he was brought before a federal court and there plead guilty to a charge, receiving a 3 year sentence in the federal penitentiary. The petitioner claimed that his sentence in the state court started on the day he was sentenced, particularly by reason of Mo. R.S.A. § 4106, R.S.Mo., 1949, § 546.610, providing that when a person is convicted the sheriff shall "without delay" deliver the convict to the keeper of the penitentiary; that when the state authorities surrendered him to the United States Marshal to serve his federal sentence the state waived its right to start his state sentence after the expiration of the federal sentence; and that he could not be compelled to serve his sentence in installments. Our Supreme Court held that the petitioner's state sentence did not commence to run until after the expiration of the federal sentence. That case, and Higlin v. Kaiser, 352 Mo. 796, 179 S.W. 2d 471, hold that the law and not the judgment fixes the date when a term of imprisonment shall commence.

In none of these instances is the right of the state to inflict the punishment fixed by the sentence of its courts impaired by the intervening event. Nor is that right impaired by reason of a void condition attached to the judgment. Thus, in Ex parte Thornberry, 300 Mo. 661, 254 S.W. 1087, the circuit court, in sentencing a convict to 2 years in the penitentiary, stayed execution until 6 o'clock p.m. of the same day, conditioned that if defendant be found in the county after that time he be arrested and committed to the penitentiary. Having been found in the county after that time he was resentenced and committed. The Supreme Court held that the provision of the judgment staying the sentence was void (as being more in the nature of an "edict of banishment" than a stay of execution) but that the judgment was othewise valid *and unsatisfied,* and that the right of the state to inflict upon the convict the authorized portion of the judgment was not affected by the void condition.

Nor should the right of the state to inflict punishment in the case at bar be impaired by the unauthorized and unknown interference with the execution of the judgment by the deputy, where the inter-

ference was initiated by the convicted person himself.

Neither our research nor the diligent efforts of counsel has revealed any Missouri case on the particular proposition involved here. The general rule is stated in an annotation in 72 A.L.R. 1271 as follows:

"According to the great weight of authority, if there is no statute providing otherwise, delay in taking the defendant into custody after conviction and sentence in no way releases the convict from the necessity of suffering the full penalty imposed by the sentence."

See also 24 C.J.S. 1231; 15 Am. Jur. Sec. 514, p. 163.

We are persuaded both by the logic of the situation and by the reasons given by the federal courts and by the appellate courts in the overwhelming majority of the states which have considered this question, that this petitioner is properly committed to serve this sentence.

A criminal judgment assessing a jail sentence is the penalty prescribed by the court for the violation of law. The essence of the judgment is the kind and amount of punishment inflicted. The judgment is to be satisfied only by undergoing the punishment inflicted, unless it be remitted by the sovereign or absolved by death. To the judicial department is committed the power to grant a bench parole in certain instances. The executive department is vested with the authority (1) to grant pardons and reprieves, through the action of the Governor; (2) to grant paroles to inmates of the penitentiary, through the Board of Probation and Parole.

The expiration of time alone, without incarceration, does not constitute execution of a criminal judgment. The time for the execution of a sentence of imprisonment is not an essential element of a criminal judgment. If the sentencing court fixes the time when a sentence of imprisonment shall commence, such provision is regarded as mere surplusage. It is regarded as directory only. Higlin v. Kaiser, supra. It is not of the essence of the judgment.

The time when a judgment of imprisonment shall commence may become important. In fact, it may be made an essential matter if the prisoner demands immediate execution of the judgment. Miller v. Evans, 115 Iowa 101, 88 N.W. 198, 56 L.R.A. 101; Ex parte Schantz, 26 N.D. 380, 144 N.W. 445. In that event the clock begins to run on the sentence and upon failure of the state through its officers to comply with the convict's demand before expiration of the period of the sentence, the debt to society is paid and he cannot be incarcerated thereafter. In other words, the convicted person has as much right to the speedy execution of the judgment as he has to a speedy trial before judgment. On the other hand, if the prisoner acquiesces in or requests the delay in the execution of the commitment he cannot later complain if he is called upon to satisfy the debt. He cannot profit by or take advantage of a delay to which he has assented or which

he himself has procured. In re Riggs, 113 Neb. 556, 203 N.W. 999; Ex parte Schantz, supra; Ex parte Crews, 12 Ala. App. 300, 67 So. 804.

In the case at bar the delay was occasioned by reason of the statement by the convict that he "wanted to appeal the Court's findings." This induced the deputy constable to inform the deputy sheriff that the petitioner "was taking an appeal." This resulted in the execution of the appeal bond, its approval by the deputy sheriff, and the release of the convict, who served no part of his sentence. The petitioner thus voluntarily sought and obtained his freedom. He not only acquiesced in, but also was active in procuring the delay in the execution of sentence. It is immaterial that he did not take the proper legal steps to appeal. It is highly material, however, that he himself effected the postponement of the fatal day when he would have to pay the penalty exacted by the law for his offense. In so doing he waived his right to insist that time is of the essence in the commencement of his term of imprisonment. Having secured the delay in the Commencement of the serving of his sentence, by representing that he was appealing from the conviction, this court will regard that as done which was represented to have been done and petitioner's rights will be determined as though he had taken, but never perfected, his appeal. He will not be allowed to assume contradictory positions to his own advantage. In re Morse, 117 F. 763, loc.cit. 765. That is to say, he will not be permitted to secure his freedom in March, 1950 on the ground that the enforcement of the judgment has been suspended because an appeal was taken, and then, inconsistently, secure his freedom in July, 1951 on the ground that the enforcement of the judgment has not been suspended because an appeal was not taken. See People ex rel. Kelly v. Ragen, 392 Ill. 423, 64 N. E. 2d 872, loc.cit. 874.

In a number of cases the situation has arisen in which, after conviction, the defendant in proper procedural form takes an appeal or gives due notice of intention to do so, but thereafter fails to perfect his appeal. Thereafter, the time period of the sentence having expired, he is committed and seeks his release via habeas corpus. In re Riggs, supra; Ex parte Schantz, supra; Ex parte Eldridge, 3 Okla. Crim. Rep. 499, 106 P. 980, 27 L.R.A. N.S. 625; Ex Parte Alexander, 5 Okla. Crim. Rep. 196, 113 P. 993; Ex parte Bell, 56 Miss. 282; Ex parte Exelton, 16 Okla. Crim. Rep. 111, 180 P. 868; Ex parte Grouch, 29 Okla. Crim. Rep. 343, 233 P. 780; Ex parte Holden, 31 Okla. Crim. Rep. 113, 237 P. 622; Middleton v. State, 160 Ark. 108, 254 S. W. 342; Mann v. People, 16 Colo. App. 475, 66 P. 452.

In other cases, although the commitment issues, the defendant is not taken into custody, but improperly is allowed to go at large, later to be committed after the expiration of the time period of the sentence. Ex parte Oliver, 11 Okla. Crim. Rep. 536, 149 P. 117;

736

Miller v. Evans, supra; Ex parte Cooper, Tex. Crim. App., 27 S.W. 2d 159; Massey v. Cunningham, 169 Ark. 410, 275 S.W. 737; Ex parte Wright, (Wash.), 200 P. 2d 478.

In still others, after the conviction is affirmed by the appellate court (defendant having been out on bond pending appeal) a delay occurs in taking him into custody, and the question arises whether the period of the delay is to be credited on the sentence. Ex parte Underwood, 94 Tex. Crim. App. 157, 248 S.W. 551; Ex parte Volker, 120 Neb. 508, 233 N.W. 890; People ex rel. Kelly v. Ragen, supra; Ex parte Hill, Crim. Ct. App. Okla., 192 P. 2d 849.

In all of these cases the courts have denied the petitioner's application for release on habeas corpus, and have required the prisoner to serve his term notwithstanding the delay.

There is no statute of limitations on the enforcement of criminal judgments imposing jail sentences. Ex parte Bugg, supra. Nor can any estoppel work against the state as a result of the lapse of time after a commitment has issued and before it is actually executed by reason of the fact that a ministerial officer has been remiss in his duty. Any other holding under the facts in the case at bar would permit ministerial officers to thwart and nullify the judgments of courts.

The relief for the hapless person described by the writer of the opinion in Ex parte Bugg, supra, loc.cit. 832, is an appeal to the department of government which has the power to grant clemency. It is not for this court to usurp that power.

The time during which petitioner legally may be detained not having expired, R.S.Mo., 1949, § 532.410, it is the recommendation of the Commissioner that petitioner forthwith be remanded to the custody of the Sheriff of St. Louis County to serve the remainder of the six months sentence heretofore imposed upon him by virtue of the final judgment of the Magistrate Court of St. Louis County.

PER CURIAM:—The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.

The petitioner is, accordingly, remanded to the custody of the Sheriff of St. Louis County. *Anderson, P. J.,* and *McCullen* and *Bennick, JJ.,* concur.