149 So.2d 574 (1963)
STATE of Florida ex rel. Bernard M. SHOTKIN, Petitioner,
v.
T.A. BUCHANAN, Metropolitan Dade County Sheriff, Respondent.
No. 63-86.
District Court of Appeal of Florida. Third District.
February 19, 1963.
Bernard M. Shotkin, in pro. per.
Richard W. Ervin, Atty. Gen., and Herbert P. Benn, Asst. Atty. Gen., Richard E. Gerstein, State Atty., and Glenn C. Mincer, Asst. State Atty., Darrey A. Davis, County Atty., and William W. Gibbs, Asst. County Atty., for respondent.
Before PEARSON, TILLMAN, C.J., and HORTON and HENDRY, JJ.
PER CURIAM.
The petitioner was arrested by the respondent on February 6, 1963, and incarcerated in the Dade County jail pursuant to a judgment of contempt entered on the 10th day of January, 1958, in a chancery proceeding then pending in the Circuit Court of Dade County, Florida. The petitioner, by letter, complained to this court that he was being illegally restrained. Writ of habeas corpus was issued by this court on February 7, 1963, to which the respondent sheriff, represented by the County Attorney, the Attorney General of Florida and the State's Attorney of the Eleventh Judicial Circuit all made return and answer. The returns and answers substantially contained the same facts, alleging the incarceration to be the result of the execution of the contempt judgment of January 10, 1958, and concluding that the petitioner was not illegally restrained. After the returns and answers of the respective parties, the cause was orally argued before the court.
It would appear from the exhibits attached to the returns that the petitioner was adjudged in contempt of court, sentenced to a term of sixty days' imprisonment in the county jail and the sheriff was directed forthwith to incarcerate him. The petitioner was permitted under this adjudication to *575 purge himself of such contempt by the payment of compensatory fines specified in the judgment. A second portion of the same judgment adjudicated the petitioner guilty of criminal contempt, sentenced him to a term of ten days in the county jail and directed the sheriff of Dade County to forthwith imprison him. The contempt sentences were specifically provided to run consecutively.
Although neither the petition nor the returns disclose what happened to the judgment of conviction, sentence and commitment after its entry on January 10, 1958, nevertheless it would appear from oral statements by the petitioner, not contradicted, that he was away from Dade County for a period of several months after the rendition of the judgment of contempt, but returned thereafter and has been here ever since. Counsel for the respondent as well as representatives of both the Attorney General's and State's Attorney's offices candidly admit that they were unable to determine the reason why the order of commitment had not been executed prior to February 6, 1963. Nowhere does it appear that the petitioner acquiesced in or consented to a suspension of the execution on the judgment of contempt. Likewise, we have no information or evidence that he ever presented himself to respondent for incarceration under the terms of the judgment of contempt, or that he has paid the compensatory fines assessed by the court in lieu of the sixty-day sentence imposed for civil contempt.
We have searched diligently and fail to find a comparable situation having been brought to the attention of any appellate court in this state. Cases such as State v. Horne, 52 Fla. 125, 42 So. 388, 7 L.R.A., N.S., 719; Terrell v. Wiggins, 55 Fla. 596, 46 So. 727; State ex rel. Libtz v. Coleman, 149 Fla. 28, 5 So.2d 60; Craton v. Sinclair, 156 Fla. 341, 22 So.2d 762; Sinclair v. State, Fla.App. 1957, 99 So.2d 238; and State v. Bateh, Fla. 1959, 110 So.2d 7; and others to which we could allude, have been examined and would seem to bear on the point but are of little aid in reaching a conclusion.
The question with which we are concerned under the peculiar facts of this case is whether or not a delay of more than five years in executing on the judgment of contempt relieves the petitioner from the effect of the judgment. The general rule, as we understand it, is that there is no statute of limitations or estoppel against the enforcement of an otherwise valid and unsatisfied judgment imposing a sentence, nor can the delay in execution on such judgment waive the state's right or work estoppel against it. See 24B C.J.S. Criminal Law § 1999, pp. 687-688. However, an exception to the general rule appears to be that although mere delay in the infliction of punishment may not be sufficient reason for releasing one convicted of a crime from the consequences of the judgment against him, when the delay has been so great that society could derive no good from its enforcement and when such delay has occurred without the fault of the convict, even though with his consent, there should be no hesitancy in refusing to enforce the judgment. See 24B C.J.S. Criminal Law § 1999, p. 689. This rule was enunciated in the case of Ex parte Bugg, 1912, 163 Mo. App. 44, 145 S.W. 831. See also Weber v. Mosley, 1951, 241 Mo. App. 727, 242 S.W.2d 273. The Missouri Court of Appeals in the Bugg case dealt with the following factual situation in applying the exception.
Bugg was convicted on January 18, 1909, on two separate charges of illegally selling liquor. On the first charge, he was fined $300 and costs or six months in the county jail. On the second charge, he was given a six months jail sentence. He remained in jail on the first charge for failure to pay the fine and costs until April 16, 1909 when the county physician, fearing that the prisoner was contracting tuberculosis, brought it to the attention of the prosecuting attorney, who in turn made it known to the court, and the court entered an order suspending further punishment so that the prisoner could "seek a change of climate." On *576 April 19, 1909, the prisoner went to western Kansas where he remained until December 25, 1910, and at that time he returned to Missouri where he remained until March 30, 1911, departing on the latter date for California where he remained until November 15, 1911. He again returned to Missouri and assisted his father in the hotel business where he remained until February 23, 1912, on which date a capias execution was issued on the second judgment and he was imprisoned. Upon his imprisonment he brought a petition for writ of habeas corpus. In granting the writ and discharging the petitioner, the Missouri court said:
"The interests of both the defendant and society must be protected, and while the defendant has guaranteed to him a speedy and fair trial, yet when he has been legally convicted and his punishment assessed, society cannot be deprived of the protection guaranteed to it by the speedy and certain punishment of offenders against its laws except for some valid reason. We do not think that mere delay in the infliction of the punishment assessed is a sufficient reason for relieving the convicted party from the consequences of a judgment against him, unless the delay has been so great that society could derive no good from its enforcement; but when such delay has occurred without the fault of defendant, although with his consent, we should have no hesitancy in refusing to enforce the judgment. * * * [B]ut punishments are inflicted solely for the protection of society, and when the execution has, without the fault of defendant, been so long delayed that society can no longer have any interest in its enforcement, there would seem to be no good reason why its enforcement should be insisted upon. [Cites omitted]."
Applying these principles to the peculiar facts in the case at bar, we cannot conceive how society at this late date, after the lapse of more than five years, would have a bona fide interest in the enforcement of this judgment against the petitioner, a 71-year-old man. Certainly it could not be upon the basis of retaliation for punishment is not inflicted for the purpose of retaliation, but solely for the protection of the public. It would be manifestly unjust, if not a denial of due process, to permit the incarceration of this petitioner after so long a time.
We should not be misunderstood as holding that a lapse of five years, or any specific time, is sufficient to bar the enforcement of a judgment similar to the one here, but each case must rest upon its particular facts and the course followed that would best promote the ends of justice. What is said here is not intended to have, nor should it have, any effect upon the fines assessed as they may be collected in the same manner as on a judgment in a civil action. See §§ 922.02 and 55.14 et seq., Fla. Stat., F.S.A.
Accordingly, the writ is granted and the petitioner is discharged.