No. 48,439

Jim Beard, *Petitioner-Appellant,* v. Raymond Maynard, *Respondent-Appellee.*

(576 P.2d 611)

Opinion filed April 1, 1978.

*E. Roger Horsky,* of Leavenworth, argued the cause, and was on the brief for the appellant.

*Roger Walter,* assistant attorney general, argued the cause, and *Curt T. Schneider,* attorney general, *Roger M. Theis,* assistant attorney general, and *Kenneth D. Doyle,* special assistant attorney general, were on the brief for the appellee.

The opinion of the court was delivered by

Prager, J.: This is an appeal by the petitioner-appellant, Jim Beard, from a judgment of the district court dismissing his petition for a writ of habeas corpus filed pursuant to K.S.A.

60-1501. The essential facts in this case are not in dispute and are as follows: Petitioner, Jim Beard, is an inmate at the Kansas State Penitentiary at Lansing, Kansas. The defendant, Raymond Maynard, is the director of the Kansas State Penitentiary. On October 8, 1963, Beard was convicted in the courts of Alabama of the offense of burglary in two cases. He received consecutive sentences of ten years and eight years for a total of eighteen years in the Alabama penitentiary. On February 2, 1970, Beard was paroled by the Alabama parole board. On December 4, 1970, he was declared a delinquent because of a violation of the prohibition law and a fugitive warrant was issued. On February 4, 1972, Beard was sentenced by a federal court to three years confinement in the United States Penitentiary at Leavenworth, Kansas. While Beard was incarcerated in Leavenworth, Alabama parole authorities placed a detainer on the petitioner. On January 14, 1974, petitioner was mandatorily released from the federal penitentiary. Approximately thirty days before Beard's release, Alabama was advised where the petitioner could be taken into custody under its fugitive warrant. At the time Beard was released from federal custody on January 14, 1974, Alabama parole authorities did not appear. Beard was transferred to the Leavenworth county jail. Pending their arrival, the petitioner was arraigned and released upon a $1,000 appearance bond. Notice was given to the Alabama authorities that a hearing would be held on February 13, 1974, concerning his transfer to Alabama. Once again, the Alabama authorities failed to appear. It is undisputed that the Alabama authorities had notice of both the January and February hearings. As a result of the failure of the Alabama authorities to appear, the magistrate court of Leavenworth county dismissed the fugitive warrant which charged the petitioner with being a parole violator from Alabama.

In a letter dated April 23, 1974, the Alabama parole authorities advised the director of the Kansas board of probation and parole that the prior parole delinquency had been declared void by the Alabama board and that the fugitive warrant previously issued had been withdrawn. The Alabama board requested that the Kansas authorities investigate the feasibility of supervising Beard by Kansas state parole officers on the Alabama parole which had been reinstated. In May of 1974, Beard was visited by a Kansas parole officer. Beard refused to accept Kansas supervision of his

Alabama parole. This refusal was reported to the Alabama authorities. At this point, Beard was living and working in Kansas City, Kansas, under the supervision of a United States probation officer.

On June 2, 1974, Beard was involved in the shooting of two men in an apartment in Kansas City, Kansas. Shortly after the shooting, Beard was taken into custody by city police officers. On June 7, 1974, the Alabama state board of pardon and parole declared Beard delinquent on his Alabama parole. On September 16, 1974, Beard was convicted on two counts of second-degree murder and was sentenced to the Kansas State Penitentiary. The circumstances of the two homicides are set forth in the opinion in *State v. Beard,* 220 Kan. 580, 552 P.2d 900 (1976), which affirmed the homicide convictions. In February of 1975, following the confinement of Beard in the Kansas State Penitentiary, the Alabama authorities filed a parole violator warrant with the Kansas authorities and a detainer was placed on Beard. On October 16, 1975, Beard filed a petition for a writ of habeas corpus in the district court of Leavenworth county. Following the appointment of counsel for the petitioner, a hearing was held to consider the merits of the petition. On November 11, 1975, following the hearing, the district court determined that the petition was without merit and entered judgment denying the writ. The petitioner Beard appeals from that decision.

The points raised on the appeal are essentially those raised in the trial court. At the outset it should be pointed out that the jurisdiction of the district court of Leavenworth county was invoked pursuant to K.S.A. 60-1501. It was the position of the petitioner that the defendant director of the Kansas State Penitentiary, by honoring the Alabama parole violator warrant, had caused petitioner's conditions of confinement to be harsher than if no detainer were on file. He contended that as a result of the outstanding Alabama warrant the petitioner had been denied reclassification from a maximum security risk and had therefore been denied the right to participate in certain programs provided at the penal institution. This court has recognized jurisdiction in the district court of Leavenworth county in habeas corpus proceedings brought pursuant to K.S.A. 60-1501 to adjudicate claims dealing with conditions of confinement in a penal institution. (*Levier v. State,* 209 Kan. 442, 497 P.2d 265 [1972].) We have also

held that habeas corpus may be used to determine the validity of a detention under an out-of-state fugitive warrant. (*In re Jones,* 154 Kan. 589, 121 P.2d 219 [1942].) K.S.A. 60-1507 has no application in this case since the petitioner is not attacking the validity of a sentence in the court which imposed the sentence.

Petitioner's first point on the appeal is that the circumstances of the case as set forth above, resulting in harsher conditions of confinement than if no detainer were on file, constitute cruel and unusual punishment. He complains that when he was in a federal prison, Alabama made no attempt to secure custody of petitioner for his parole violations. He argues that the Alabama parole authorities can't seem to make up their minds whether to take petitioner into custody and that there is no reason to believe that, at the conclusion of petitioner's present sentence in Kansas, Alabama would actually attempt to gain custody of petitioner to answer for his parole violations. Viewed in this light, Beard contends that the continuing threat of the Alabama detainer constitutes cruel and unusual punishment. The petitioner has not cited any authority for the position that the issuance of a parole violator warrant in and of itself constitutes cruel and unusual punishment in violation of either Section 9 of the Kansas Bill of Rights or the Eighth Amendment to the United States Constitution. The question of what constitutes cruel and unusual punishment as that term is used in state and federal constitutions has been determined in many jurisdictions. The question was before us recently in *State v. Freeman,* 223 Kan. 362, 574 P.2d 950 (1978), where we discussed the subject in some depth. In a general way it may be stated that the term includes both methods of punishment which are inhuman and barbarous and disproportionate sentences which shock the conscience.

In *Moody v. Daggett,* 429 U.S. 78, 50 L.Ed.2d 236, 97 S.Ct. 274 (1976), as in the present case, the petitioner Moody had an outstanding parole violator warrant issued as a detainer after the petitioner's conviction and confinement in another jurisdiction on two counts of homicide. Moody requested that the warrant be executed immediately and that his parole violation hearing be held at the earliest possible date. The court in *Moody* held that there was no constitutional requirement that an immediate parole violation hearing be held. It further held that Moody was not deprived of any constitutionally protected rights simply by the

issuance of the parole violator warrant. We have concluded that the rule of *Moody* should be applied in this case. Petitioner Beard's present loss of liberty is the result of his conviction of two counts of second-degree murder in Kansas. The outstanding parole violator warrant is based upon two other convictions in Alabama. It does not appear from the record that petitioner has ever requested Alabama to provide him a parole violation hearing. Under the circumstances, we have concluded that the petitioner's present confinement in a Kansas penal institution with an outstanding Alabama detainer on a parole violator warrant does not constitute cruel and unusual punishment under either the Kansas or Federal Constitutions.

As his next point Beard contends that Alabama, by its actions or nonactions, has impliedly waived or pardoned his past parole violations. In support of his position the petitioner cites a case where a state board of parole failed to take action on a parole violation for twenty-eight years (*Shields v. Beto,* 370 F.2d 1003 [5th Cir. 1967]), and a case where Louisiana authorities surrendered a prisoner to federal authorities without demand or conditions for the surrender of the prisoner at the completion of his sentence. (*In re Jones,* supra.) It cannot be denied that under certain circumstances the failure of parole authorities to revoke a parole may be held to constitute a commutation or pardon of a parole violation. Of necessity, however, parole boards must be vested with a wide discretion to act in this area. Whether a parole should be revoked for a violation of its terms rests within the sound discretion of the parole board. A parole board may in its sound discretion overlook a parole violation and give the offender another chance to make good by continuing him on parole. If it does so, and the offender again violates his parole by committing another crime, the parole board is not precluded from revoking the parole on the basis of the new violation.

A case with factual circumstances quite similar to the present case is *Brown v. Taylor,* 287 F.2d 334 (10th Cir. 1961), *cert. den.* 366 U.S. 970, 6 L.Ed.2d 1259, 81 S.Ct. 1933 (1961). There the petitioner was sentenced in a federal district court on December 27, 1934, to a term of twenty-five years for armed robbery. On November 16, 1945, he was released on parole. On February 13, 1952, while still on parole, Brown was sentenced on a new state crime to the Missouri State Penitentiary. A parole violator warrant

was issued and on October 6, 1952, the warrant was lodged as a detainer with the Missouri State Penitentiary. This warrant was never executed since it was withdrawn by the United States Board of Parole on March 30, 1953. The prisoner was released from the Missouri State Penitentiary on June 11, 1953, and soon after June 30, 1953, he was reinstated on the federal parole. In December of 1958, Brown was arrested in Missouri and charged with armed robbery. That same month the United States Board of Parole issued a parole violator warrant based upon the circumstances of his most recent arrest in Missouri. This latter violator's warrant was executed on May 26, 1959. In a habeas corpus proceeding Brown contended that the United States had lost jurisdiction by withdrawing the parole violator warrant of October 6, 1952, and by refusing to accept him as a parole violator at that time. The Court of Appeals held that the United States Board of Parole had lawfully revoked Brown's parole and that he could be required to serve the balance of the term remaining when he was released from his sentence on November 16, 1945.

This is the same point that is raised by Beard on this appeal. We have concluded that the mere failure of a parole board to revoke a parole for a parole violation is not, in and of itself, a waiver, pardon, or release of the offender from his status as a parolee. The mere existence of a parole violator warrant does not amount to execution of such warrant. When a parolee is arrested on another charge, the parole board is not required to execute its warrant immediately, and the warrant may be held in abeyance until the intervening charge is disposed of. (*Jefferson v. Willingham,* 366 F.2d 353 [10th Cir. 1966], *cert. den.* 385 U.S. 1018, 17 L.Ed.2d 554, 87 S.Ct. 744 [1967].) Furthermore, incarceration in a penal institution of the United States or of another state for an offense which is the basis for the revocation of the parole, constitutes good reason for delay in execution of the revocation warrant. (*Small v. Britton,* 500 F.2d 299 [10th Cir. 1974].) A parole violator warrant that has been lodged with the penal institution of another jurisdiction as a detainer need not be executed until the violator has completed his sentence at that institution. At that time the parolee must be provided an adversary parole violation hearing. The parole board may, in its discretion, decide not to revoke the parole in view of the time served by the parolee in the institution of the other state. (See *Moody v. Daggett,* supra.)

It should be noted that an administrative remedy has been provided by the Kansas Department of Corrections where a prisoner is denied participation in certain institutional programs as a result of the existence of a detainer from another jurisdiction. Under administrative procedures § 142 of the Kansas Department of Corrections (superseded by § 217 of the Department of Corrections Policy and Procedure Manual, effective February 1, 1977), it is the declared policy of the department of corrections to "seek the permission of the jurisdiction who filed the detainer to grant minimum custody if deemed appropriate by institution officials." We assume that this administrative procedure will be used in an appropriate case where the penal authorities have concluded that a prisoner is entitled to a reclassification to a less than maximum custody status.

The final point raised by Beard on the appeal is that the dismissal of the first fugitive warrant by the magistrate court of Leavenworth county on February 13, 1974, bars the issuance of another parole violator warrant in February 1975. We cannot agree with the petitioner's position in this regard. In asserting that the dismissal of the original detainer is res judicata as to all subsequent detainers, the petitioner misconstrues the proper application of the doctrine of res judicata. In order to bar a subsequent action through the application of the doctrine of res judicata, the original decision must have been an adjudication "on the merits." (*Griffith v. Stout Remodeling, Inc.,* 219 Kan. 408, 548 P.2d 1238 [1976].) Here the dismissal of the original detainer on February 13, 1974, was not an adjudication on the merits, but simply a dismissal for failure of the Alabama authorities to appear. Such a determination in no respect adjudicated the merits of the Alabama parole violation. In addition, since the parole violation supporting the first detainer action was declared void by Alabama parole authorities, that violation is not a matter for consideration in this appeal. Even if it could be successfully argued that Alabama's failure to zealously prosecute the *first* detainer should prevent them from using the same parole violation to support a second detainer, there is neither a res judicata effect nor an arguable waiver or commutation as to *subsequent* violations of the Alabama parole. Since the subsequent parole violator warrant is based upon the petitioner's conviction on two counts of second-degree murder, resulting in a new violation of

the Alabama parole, the present detainer has no connection with the magistrate court's dismissal of the prior detainer. Under the circumstances of this case, each violation of parole constitutes a separate basis upon which a parole violator warrant can be issued. The original dismissal did not have a res judicata effect upon the subsequent parole violation.

For the reasons set forth above the judgment of the district court is affirmed.