(947 P.2d 466)
No. 75,684

STATE OF KANSAS, *Appellee*, v. CLIFFORD A. SCOTT, *Appellant*.

Opinion filed November 7, 1997.

*Edward G. Collister, Jr.*, special appellate defender, *Rick Kittel*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for appellant.

*Nancy Siples Brumbeloe*, assistant district attorney, *Joan M. Hamilton*, district attorney, and *Carla J. Stovall*, attorney general, for appellee.

*Kelly A. Feyh*, assistant attorney general, for *amicus curiae* Kansas Attorney General.

Before GERNON, P.J., KNUDSON, J., and VAN HAMPTON, District Judge, assigned.

KNUDSON, J.: Clifford A. Scott appeals from the district court's sentencing order that he register as a sex offender under the Kansas Sex Offender Registration Act (KSORA), K.S.A. 22-4901 *et seq*. Scott contends that the Act is violative of double jeopardy and, as applied to him, constitutes cruel and unusual punishment.

The underlying facts are not fully developed in the record because Scott ultimately entered a plea of no contest to a reduced charge. Nevertheless, some sense as to what occurred can be

fleshed out from the probable cause affidavit, the victim's testimony, and the statements made by Scott to the presentence investigator. It appears Scott and the victim, J.R., were friends. Scott came to J.R.'s home and the two of them drank beer and watched television. At some point, J.R. went into her bedroom to sleep, with Scott remaining in the living room. Later, Scott came into J.R.'s bedroom and sexually assaulted her. It is not clear how the assault ended. We do know J.R. received several rib fractures as a result and the police were summoned.

Scott was charged with one count of aggravated sexual battery, a level 5 person felony, in violation of K.S.A. 21-3518(a)(1), and one count of aggravated battery, a level 7 person felony, in violation of K.S.A. 21-3414(a)(1)(C). Pursuant to a plea agreement, Scott pled no contest to attempted aggravated sexual battery, a severity level 7 felony. K.S.A. 21-3301(c); K.S.A. 21-3518(a)(1). His criminal history of three nonperson misdemeanors and one person misdemeanor placed him in category H under the Kansas Sentencing Guidelines Act, providing for a presumptive sentencing range of 14-13-12 with probation for 24 months. K.S.A. 21-4704. The district court imposed a presumptive sentence of 14 months with probation for 24 months. The district court also ordered Scott to register under the KSORA.

At sentencing, Scott maintained that the KSORA was punitive in nature, that the public access provision constituted cruel or unusual punishment, that the KSORA violated his procedural due process rights, and that K.S.A. 22-4908 was vague because the term "rehabilitated" was not defined. On appeal, Scott raises the issues of whether the continuing obligation of registration under K.S.A. 22-4904, together with the potential for public disclosure under K.S.A. 22-4909, is violative of the prohibition against: (1) double jeopardy under the Fifth Amendment to the United States Constitution, or (2) cruel and unusual punishment under the Eighth Amendment to the United States Constitution or § 9 of the Kansas Constitution Bill of Rights.

In her *amicus curiae* brief, the Attorney General of Kansas contends Scott's double jeopardy claim is not properly before this court because it is being raised for the first time on appeal. "When

consititutional grounds are asserted for the first time on appeal, they are not properly before us for review. *State v. Kaesontae*, 260 Kan. 386, 920 P.2d 959 (1996); *State v. Steadman*, 253 Kan. 297, 306, 855 P.2d 919 (1993)." *State v. Myers*, 260 Kan. 669, 701, 923 P.2d 1024 (1996), *cert. denied* 521 U.S. 1118 (1997).

Scott acknowledges this issue was not presented to the district court, but raises several arguments in support of appellate review. Scott contends that if double jeopardy does preclude repeated registration and public disclosure of registration information, the district court would be without subject matter jurisdiction to impose such measures. Scott correctly notes an objection to subject matter jurisdiction may be raised at any time. See *Sunflower Racing, Inc. v. Board of Wyandotte County Comm'rs*, 256 Kan. 426, Syl. ¶ 4, 885 P.2d 1233 (1994). Scott then proceeds to argue that if the district court lacked subject matter jurisdiction, the sentence imposed would be illegal. He then notes an illegal sentence may be corrected by an appellate court at any time, citing in support K.S.A. 22-3504 and *State v. Scherzer*, 254 Kan. 926, Syl. ¶ 1, 869 P.2d 729 (1994). These arguments do not have merit. The district court clearly had subject matter jurisdiction.

Scott's most persuasive argument is that an issue may be raised for the first time on appeal when consideration is necessary to prevent a denial of fundamental rights. See *State v. Cady*, 254 Kan. 393, 398, 867 P.2d 270 (1994). We find this argument unpersuasive. Scott's plea of no contest was entered pursuant to plea negotiations. The district court, prior to accepting Scott's plea, specifically asked him if he was aware of the obligation to register under the KSORA and whether that would make any difference in entering his plea of no contest. Scott responded that he understood and it made no difference. This is strong evidence of a voluntary waiver of the defense of double jeopardy that Scott now asks this court to address. In *Cox v. State*, 197 Kan. 395, 402, 416 P.2d 741 (1966), the Supreme Court noted that the defense of double jeopardy may be waived by a guilty plea. We believe there is a strong probability the same reasoning is applicable to Scott's no contest plea entered only after the district court made certain Scott was aware of the obligation to register under the KSORA. Conse-

quently, we conclude the double jeopardy issue will not be given further consideration in this appeal.

We now turn to the difficult issue of whether the public disclosure provision of the KSORA as applied to Scott constitutes cruel and unusual punishment under the Eighth Amendment of the United States Constitution or § 9 of the Kansas Constitution Bill of Rights. The issue is difficult because we are required to decide if legislation that is clear and unambiguous must be nullified. Understandably, under our standard of review, we must give careful deference to the doctrine of separation of powers. It is the function of the legislature to decide public policy, not this court.

The constitutionality of a statute is presumed, and all doubts must be resolved in favor of its validity. Before an act may be stricken down, it must clearly appear that the statute violates the constitution. It is the court's duty to uphold a statute under attack rather than defeat it. If there is any reasonable way to construe the statute as constitutionally valid, that should be done. A statute should not be stricken down unless the infringement of the superior law is clear beyond substantial doubt. *State v. Myers*, 260 Kan. 669, Syl. ¶ 4.

In *Myers,* the Kansas Supreme Court upheld the constitutionality of the registration requirement in the KSORA under an ex post facto analysis, but did not decide the cruel and unusual punishment issue. 260 Kan. at 700-01. However, the court went on to hold:

"The disclosure provision allowing public access to sex offender registered information, K.S.A. 22-4909, when applied to Myers, is unconstitutional punishment under the Ex Post Facto Clause. *The unlimited public accessibility to the registered information and the lack of any initial individualized determination of the appropriateness and scope of disclosure is excessive, giving the law a punitive effect—notwithstanding its purpose, shown in the legislative history, to protect the public.*" (Emphasis added.) 260 Kan. at 701-02.

The above language from *Myers* leaves no doubt that the disclosure provision of K.S.A. 22-4909 constitutes punishment.

The Eighth Amendment to the United States Constitution prohibits the infliction of cruel and unusual punishments. The clause forbids cruel methods of punishment that are not regularly or cus-

tomarily employed. See *Harmelin v. Michigan*, 501 U.S. 957, 978-79, 115 L. Ed. 2d 836, 111 S. Ct. 2680 (1991).

The Kansas Constitution provides in § 9 of the Bill of Rights that cruel or unusual punishment may not be inflicted. This prohibition includes both methods of punishment which are inhuman and barbarous and disproportionate sentences which shock the conscience. *Beard v. Maynard*, 223 Kan. 631, 634, 576 P.2d 611 (1978). This breadth of concern under § 9 of the Kansas Constitution Bill of Rights that includes a concern for the proportionality of a sentence may arguably be broader than under the Eighth Amendment to the United States Constitution. See *Harmelin v. Michigan*, 501 U.S. at 980-81; *State v. Weigel*, 228 Kan. 194, 203, 612 P.2d 636 (1980).

It should be noted that Scott's argument is not based on the length of his sentence, but on the form of the punishment. Relevant considerations previously recognized in reported cases are whether the method of punishment is inhumane, inherently cruel, shocking, unacceptable to society, or offends fundamental notions of human decency. See *State v. Rouse*, 229 Kan. 600, 605-06, 629 P.2d 167 (1981); *State v. Freeman*, 223 Kan. 362, 364-67, 574 P.2d 950 (1978). In considering the disclosure provisions of the KSORA, we would add as a consideration the injury that may occur to reputational interests of the offender. In *E.B. v. Verniero*, 119 F.3d 1077, 1102 (3d Cir. 1997), reputational interests were identified as

"the burdens of isolation, harassment, loss of opportunities, and the myriad of more subtle ways in which one is treated differently by virtue of being known as a potentially dangerous sex offender. The other type of indirect effect is exposure to an increased risk of private violence that can result in damage to one's property or injury to one's person."

K.S.A. 22-4904 provides:

"(a) Within 15 days of the sex offender coming into any county in which the sex offender resides or is temporarily domiciled for more than 15 days, the sex offender shall register with the sheriff of the county.

"(b)(1) If any person required to register as provided in this act changes the address of their residence, the sex offender shall, within 10 days, inform in writing the law enforcement agency where last registered of the new address.

"(2) The law enforcement agency shall, within three days of receipt of the new address, forward this information to the Kansas bureau of investigation and to the law enforcement agency having jurisdiction of the new place of residence."

Under K.S.A. 22-4907, registration is to include the offender's name, date of birth, offense or offenses committed, date of conviction or convictions obtained, photograph, fingerprints, and social security number.

The information provided by the sex offender is open to inspection in the sheriff's office by the public and is subject to the Kansas Opens Records Act, K.S.A. 45-215 *et seq.* K.S.A. 22-4909.

With this background, we now will consider whether the requirement of registration together with unrestricted public access to the registration information is grossly disproportionate to Scott's crime and, therefore, in violation of § 9 of the Kansas Constitution Bill of Rights.

The Kansas Supreme Court has adopted a three-prong test to determine this issue:

"(1) The nature of the offense and the character of the offender should be examined with particular regard to the degree of danger present to society; relevant to this inquiry are the facts of the crime, the violent or nonviolent nature of the offense, the extent of culpability for the injury resulting, and the penological purposes of the prescribed punishment;

"(2) A comparison of the punishment with punishments imposed in this jurisdiction for more serious offenses, and if among them are found more serious crimes punished less severely than the offense in question the challenged penalty is to that extent suspect; and

"(3) A comparison of the penalty with punishments in other jurisdictions for the same offense." *State v. Freeman*, 223 Kan. at 367.

There is no evidence in the record to support a reasonable inference that Scott is a repeat sex offender posing a danger to the community. To the contrary, the record strongly suggests that Scott, in an intoxicated condition, impulsively committed a serious violent crime against the victim under very situational circumstances not likely to arise in the future. Scott is not a pedophile or a child molester, and there is no indication that he has a mental illness or personality disorder that would suggest he will reoffend. Scott is being required to register as a sex offender solely because of the crime he committed, with no risk assessment whatsoever.

We further note the incongruity in a minimal sentence of 14 months with presumptive probation, while at the same time requiring an individual to register as a sex offender for 10 years. The guiding principle of the Kansas sentencing guidelines is to put violent offenders in prison, with nonviolent offenders granted probation. The inconsistency in these two punishments is difficult to reconcile.

In *Myers*, there is an excellent survey of the registration laws of other states. After noting all states have sex offender registration laws, the Supreme Court stated: "We have found no other state's disclosure statute to be broader than KSORA's." 260 Kan. at 675. In its analysis as to the scope of public disclosure under K.S.A. 22-4909, the court stated:

> "KSORA places no restrictions on who is given access to the registered offender information or what that person does with the information. The print or broadcast media could make it a practice of publishing the list as often as they chose. Anyone could distribute leaflets containing the registered information anywhere and anytime. . . . The *unrestricted public access leaves open the probability that a registered sex offender could suffer the kind of public stigma and ostracism that concerned the Artway court, although KSORA does not provide for any affirmative notification.*
>
> " 'In particular, Artway argues that Megan's Law is analogous to that most famous badge of punishment: the Scarlet Letter. "There can be no outrage . . . against our common nature,—whatever be the delinquencies of the individual,—no outrage more flagrant than to forbid the culprit to hide his face for shame; as it was the essence of this punishment to do." Nathaniel Hawthorne, *The Scarlet Letter* 63-64 (Random House 1950) (1850). Like the Scarlet Letter, Artway contends, Megan's Law results in public ostracism and opprobrium: it would subject him to potential vigilantism, impair his opportunities to work, and damage his abilities to develop and maintain stable relationships. In his submission, its "remedial" purpose—to protect the public from him—seeks to brand him as an outcast. Such a shunning by one's community is the essence of historical punishment, Artway contends.
>
> " '*Artway's argument has considerable force, but the notification issue is not before us.* We evaluate only registration, and that provision bears little resemblance to the Scarlet Letter. Registration simply requires Artway to provide a package of information to local law enforcement; registration does not involve public notification. *Without this public element, Artway's analogy fails. The Scarlet Letter and other punishments of "shame" and "ignominy" rely on the disgrace of an individual before his community.* The act of registering with a discrete government entity, which is not authorized to release that information to the

community at large (except in emergencies), cannot be compared to public humiliation.' . . . (Emphasis added.)" 260 Kan. at 697-98 (quoting *Artway v. Attorney General of State of N.J.*, 81 F.3d 1235, 1265 [3d Cir. 1996]).

Since its decision in *Artway*, the Third Circuit in a double jeopardy analysis in *E.B. v. Verniero*, 119 F.3d at 1096-97, did uphold New Jersey's three-tier public notification system, a system, we would add, that requires an assessment of the offender and a measured notification system. Thus, New Jersey's approach to public access is strikingly different than the carte blanche access under Kansas law. K.S.A. 22-4909 makes no effort to limit notice to a particular geographical area or to a particular group of individuals or agencies on an as reasonably needed basis.

Comparing K.S.A. 22-4909 with the limited access laws of our sister states convinces us that this statute as applied to Scott goes beyond what is circumscribed by § 9 of the Kansas Constitution Bill of Rights. In and of itself, the crime Scott committed does not support public need for such disclosure and without some kind of assessment to evaluate his future propensity to commit a violent sex offense, there is no objective standard upon which his reputational rights can be swept away in the name of protecting the community. For Scott, unlimited disclosure is tantamount to the Scarlet Letter.

We conclude Scott's registration as required under K.S.A. 22-4909 shall not be open to inspection by the public or subject to the provisions of the Kansas Open Records Act.

Affirmed in part and reversed in part.