No. 35,453

In re Application of LESTER JONES, alias JOE PAYNE, for a Writ of Habeas Corpus (LESTER JONES, *Appellee,* v. TED C. MORROW, Sheriff of Leavenworth county, et al., *Appellants*).

(121 P. 2d 219)

Opinion filed January 15, 1942.

Jay S. Parker, attorney general, Jay Kyle, assistant attorney general, Colonel H. Boone, deputy county attorney, and M. E. Culligan, assistant attorney general, of New Orleans, La., for the appellants.

Lucien B. Rutherford, of Leavenworth, for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This is an appeal in a habeas corpus case. The proceeding was originally brought in the probate court of Leavenworth county. The decision in that court was against petitioner and he appealed to the district court. The latter court found petitioner was illegally imprisoned and detained, and ordered his immediate discharge from the custody of respondents. Respondents have appealed.

The district court made findings of fact and conclusions of law. There is no objection by either of the parties to the findings of fact. No additional findings of fact were requested. The decision must, therefore, turn upon the findings as made, which were:

"Sometime during the month of March, 1937, Lester Jones entered a plea of guilty in the district court of the United States for the western district of Louisiana to a charge of violating the Dyer act and was, by the court, placed on probation without sentencing.

"Subsequently and during the month of March, 1938, said Lester Jones pleaded guilty to two counts of robbery and was, by the district court for the Parish of Caddo of the state of Louisiana, sentenced to serve ten years in the Louisiana state penitentiary on each count, the sentences to run concurrently.

"Immediately thereafter, said Lester Jones was taken into the district court of the United States for the western district of Louisiana, the probation theretofore granted by said court was revoked and Jones was sentenced to serve five years to run concurrently with the ten-year sentences he had just received in the state court.

"Shortly thereafter, said Lester Jones was taken to the Louisiana state penitentiary at Angola, La., and delivered into the custody of the warden of said institution, there to serve the ten-year sentences of the district court of Caddo Parish, Louisiana, and the five-year sentence of the United States district court.

"About one year later, and during the month of April, 1939, said Lester Jones was taken from the Louisiana state penitentiary where he had been serving the aforesaid sentences and was, by the warden of that institution, delivered into the custody of an agent of the Department of Justice of the United States by whom Jones was removed to New Orleans, La., and placed in a United States jail at that place.

"Shortly thereafter, Jones was removed from the United States jail at New Orleans, La., by an agent of the Department of Justice of the United States, by whom he was transported to Shreveport and there placed in confinement in a penal institution of the United States.

"Jones remained in the Shreveport institution only a short time and then was taken from there by an agent of the Department of Justice of the United States to the United States penitentiary, at Leavenworth, Kan., and delivered into the custody of the warden at that penitentiary.

"Sometime after Jones' incarceration in the United States penitentiary, at Leavenworth, Kan., a detainer was filed with the warden of that institution by the state of Louisiana.

"Under date of August 8, 1941, the governor of Louisiana executed his executive request directed to the governor of Kansas for the extradition of said Lester Jones, in which the governor of Louisiana certified that Lester Jones stands charged with the crime of robbery in Caddo Parish, in the state of Louisiana, and further certifying that Lester Jones has fled from justice and has taken refuge in the state of Kansas.

"Under date of August 28, 1941, an executive warrant was issued by the governor of Kansas, ordering the arrest of said Lester Jones and the delivery of him to O. D. Treadway, the agent of the state of Louisiana;

"The executive warrant of Payne Ratner, governor of the state of Kansas, ordering the arrest and delivery of Lester Jones as aforesaid, after a recitation of the demand of the governor of Louisiana, contains the following paragraphs:

" 'AND WHEREAS, The said governor of Louisiana aforesaid has produced a copy of a commitment, committing the said Lester Jones, alias Joe Payne, to the penitentiary of the state of Louisiana to serve sentence for the crime of robbery; also reprieve was granted and order revoking said reprieve was produced in and by which it appears that the said Lester Jones, alias Joe Payne, stands committed to the penitentiary of the state of Louisiana and owing service to the state of Louisiana;

" 'AND WHEREAS, It has been made to appear to me that the said Lester Jones, alias Joe Payne, is within the state of Kansas, fugitive from the justice of the said state of Louisiana;

" 'AND WHEREAS, The said papers are certified by the governor of said state of Louisiana, as authentic, and the said demand and copy of said commitment, parole and order revoking said parole are now on file in the executive office of the state of Kansas;'

"following which was the order of arrest and delivery of Lester Jones to O. D. Treadway, the agent of the state of Louisiana, duly commissioned by the governor of Louisiana to receive said fugitive.

"By order of court, all of the documents of every kind which accompanied the requisition of the governor of Louisiana and which were delivered to the governor of the state of Kansas by O. D. Treadway, the special agent of the state of Louisiana, were, by said O. D. Treadway, brought into court for inspection by the court, and among said documents there was no copy, certified or otherwise, of any reprieve or parole or other act of clemency granted to said Lester Jones by the governor of the state of Louisiana, nor was there any copy, certified or otherwise, of any order revoking any reprieve, parole or other act of clemency.

"Among said documents was an authenticated copy of a request made by the attorney general of the state of Louisiana to the governor of said state that a requisition be issued for the return of said Lester Jones, and the only reference herein contained to a reprieve is contained in the following two paragraphs, to wit:

" 'That said Lester Jones was on March 10, 1938, in the cause *"United States v. Lester Jones,* No. 8017 of the docket of the district court of the United States of America for the western district of Louisiana, Shreveport Division, sentenced to serve five years to run concurrently with the sentence to be served in the Louisiana state penitentiary, at Angola, La.; that, on April 28, 1939, *under and by authority of a reprieve granted by Governor R. W. Leche,* the said Lester Jones was surrendered to the federal authorities to serve the federal sentence hereinabove referred to . . ..";'

"Introduced in evidence was an affidavit of D. D. Bazer, warden, Louisiana state penitentiary, sworn to on July 23, 1941, which is certified to as authentic by the governor of Louisiana which contains the following statements, to wit:

" 'That prisoner number 28853—Lester Jones, was duly adjudged guilty in the first judicial district court for the Parish of Caddo, state of Louisiana, on March 10, 1938, of the crime of robbery, on two counts, a felony, and was sentenced to serve ten years on each count, concurrently, in the Louisiana state penitentiary; that he was actually incarcerated therein on March 12, 1938;

" 'That on April 28, 1939, the said Lester Jones was released to federal authorities to serve sentence imposed in the United States district court for the western district of "Louisiana," *by virtue of an executive reprieve by the governor of Louisiana, dated April 25, 1939, the condition of the reprieve being that when released from federal prison, if such release is prior to his legal discharge date from the Louisiana state penitentiary, he is to be returned to the Louisiana state penitentiary to serve out his sentence.*

" 'That, following such release, he was actually incarcerated in the United States penitentiary, Leavenworth, Kan., from which institution he is scheduled to be released on or soon after August 29, 1941;

" 'That the legal discharge date of the said Lester Jones from the Louisiana state penitentiary is not sooner than March 12, 1948.'

"The so-called 'reprieve' granted to said Lester Jones by R. W. Leche, governor of the state of Louisiana, on April 28, 1939, was granted without any request on the part of Lester Jones for clemency; it also was granted without his knowledge, without notice to him and without his consent or approval to any *of its terms or conditions.*

"One Ruel A. Spriggs was a co-defendant with this petitioner, Lester Jones, in the district court of the United States for the western district of Louisiana, for violation of the Dyer act; he was placed on probation at the same time with Jones; Spriggs and Jones were co-defendants in the district court for the Parish of Caddo of the state of Louisiana in the robbery case and received the same sentence; they were taken into the United States district court together and probation of both was revoked and they each were sentenced to five years at the same time; they were taken to the Louisiana state penitentiary together and started their sentences at the same time; both were removed and delivered into the custody of the United States marshal at the same time and were taken to New Orleans, thence to Shreveport and finally to the United States penitentiary together, so that all of the facts above stated applied to Spriggs.

"On October 12, 1939, L. A. Jones, warden of the Louisiana state penitentiary, addressed a letter on stationery of the office of the warden of the Louisiana state penitentiary to 'Ruel A. Spriggs, our No. 28851, No. 55214, in U. S. Pen'y., Leavenworth, Kansas' in which he stated: 'You get credit here for every day served in the federal prison, provided you keep a clear record there. If you are discharged there before your time is up here, it will be necessary to bring you back here. The full period of your sentence does not expire until March 12, 1948.' Further on in the same letter is the following statement: 'you were reprieved especially to allow you to serve the federal sentence.'

"The petitioner, Lester Jones, is not awaiting trial for any offense against the laws of the state of Louisiana;

"The petitioner, Lester Jones, has not escaped from any penitentiary, jail or other penal institution in or of the state of Louisiana;

"The petitioner, Lester Jones, has not violated the terms or conditions of any reprieve, parole, conditional pardon, or other act of clemency granted to him by the governor of the state of Louisiana or by any other official or by any board or commission of the state of Louisiana.

"The petitioner, Lester Jones, was not committed to any United States penal institution by the district court of the United States for the western district of Louisiana when his probation was revoked, but his five-year sentence was to run concurrently with the ten-year sentence in the Louisiana state penitentiary." (Italics supplied by the district court.)

The conclusions of law were:

"The executive order of the governor of the state of Louisiana, which is termed a 'Reprieve,' does not come within the universal definition of a 'reprieve' because it does not postpone or delay the execution or beginning of the sentence imposed, since, by its terms, the petitioner, Lester Jones, is to receive credit on his ten-year sentences for the time served in the United States penitentiary.

"The so-called 'Reprieve' is not a conditional pardon, nor is it a parole, for there were no conditions which might be violated or broken by the prisoner and there was no provision for a revocation of said 'Reprieve';

"The documents which accompanied the requisition of the governor of the state of Louisiana for extradition were insufficient to show the granting of a 'Reprieve,' the terms or conditions of such reprieve or of the violation thereof and were not grounds for issuance by the governor of the state of Kansas of his executive warrant;

"The surrender of petitioner, Lester Jones, by executive order of the governor of Louisiana to the United States before completion by said Lester Jones of his ten-year sentences in the Louisiana state penitentiary, constituted a waiver of the right of the state of Louisiana to demand the return of said Lester Jones to the state of Louisiana.

"The petitioner, Lester Jones, is not a fugitive from justice."

Appellants filed no motion for a new trial. The appeal is solely and alone from the judgment. No specifications of error are alleged. No additional findings of fact were requested. Do the unchallenged findings of fact compel a reversal of the judgment?

The first and primary question confronting us is whether, in view of facts now admitted by appellants, this court is required to say the trial court erred in determining the effect of the order of the governor of Louisiana, pursuant to which appellee was released from the custody of the officers of that state.

The only penal institution to which appellee had been committed was the state penitentiary of Louisiana. Appellee was a prisoner of that state at the time of his release and delivery to the federal authorities. The findings disclose no demand by federal authorities for his release from the state penitentiary of Louisiana. Appellants

do not contend the state of Louisiana was under any duty to release appellee from the state penitentiary and to permit his removal from the jurisdiction of the state of Louisiana. His state sentence had not expired and appellants do not contend there was any authority for permitting his sentence to be served in some other jurisdiction. Insofar as the findings of fact are concerned the governor of Louisiana may have released appellee to the federal authorities in order to save the state of Louisiana the expense, inconvenience and responsibility, incident to his incarceration within its jurisdiction. Neither the executive order for his release, nor a certified copy thereof, was attached to the requisition papers. Neither of them was produced at the trial. No parole, or order revoking it, was produced.

Appellants' theory and argument is that the executive order, pursuant to which appellee was released from the custody and control of the state of Louisiana and delivered to the federal authorities, was conditioned upon his return to the state of Louisiana, after his federal sentence had been served, and that appellee had violated the condition. Such, in substance, were the representations contained in the requisition documents and in the warrant of the governor of Kansas which ordered his arrest and delivery. The warrant of the governor of Kansas also stated the parole and order revoking it were on file in his executive office. A trial was had to determine whether the facts supported the representations contained in the requisition papers and the averments contained in the warrant of the governor of this state. The trial court found they did not. One of the express findings of fact was:

"The petitioner, Lester Jones, has not violated the terms or conditions of any reprieve, parole, conditional pardon, or other act of clemency granted to him by the governor of the state of Louisiana or by any other official or by any board or commission of the state of Louisiana."

That the facts contained in the finding are true is now admitted.

What is the effect of the admitted facts? It is that in refusing to return to the state of Louisiana appellee violated no condition attached to his release from the custody of officials of the state of Louisiana. The executive order of release was in the nature of a commutation of sentence. That was its legal effect.

Appellants concede the constitutional and statutory powers of the governor of Louisiana, at the time the executive order was issued, consisted of the right to grant reprieves, pardons, to commute sen-

tences and to remit fines and forfeitures. (Constitution of Louisiana, art. 5, § 10; Act No. 14, Extraordinary Session of the Legislature of Louisiana of 1934, § 2.) The executive order did not involve fines or forfeitures. For the reasons stated by the trial court in its first conclusion of law, the executive order obviously did not constitute a reprieve. (3 Bouvier's Law Dictionary, Rawles' 3d Rev., 2901; 20 R. C. L. 522, § 3; 46 C. J. 1183, § 5; *Sterling v. Drake*, 29 Oh. St. 457, 23 Am. Rep. 762; *Ex parte Hyde*, 140 Fla. 494, 192 So. 159; *Clifford v. Heller*, 63 N. J. L. 105, 42 Atl. 155.) The real nature of an act of clemency is not changed by what it is called. Its effect is determined by what it is. (*In re C. H. Charles and Louis Howard, Petitioners*, 115 Kan. 323, 328, 222 Pac. 606.) Appellee had in nowise participated in the executive order of release. He had agreed to perform no conditions of any kind or character with respect to his release from the custody of Louisiana officials. Clearly the order of release did not constitute a parole. (46 C. J. 1183, § 6.) He therefore violated no conditions of a parole. Obviously, appellants do not contend the executive order constituted a pardon. The only other power of executive clemency the governor of Louisiana possessed was to commute sentences. Commutation merely substitutes lighter for heavier punishment.

Following the first World War this court had occasion to consider orders by which prisoners were released from our state penitentiary in order that they might enlist for service in that war. (*In re C. H. Charles and Louis Howard, Petitioners*, supra.) In determining that the releases constituted commutations of sentence and not conditional pardons, it was said:

"Although power to commute is logically derivable from power to pardon, on the principle that the greater includes the less, commutation is essentially different from pardon. Pardon exempts from punishment, bears no relation to term of punishment, and must be accepted or it is nugatory. Commutation merely substitutes lighter for heavier punishment. (*Rich v. Chamberlain*, 107 Mich. 381, 383.) It removes no stain, restores no civil privilege, and may be effected without the consent and against the will of the prisoner. (*In the matter of Sarah M. Victor*, 31 Ohio St. 206; 20 R. C. L. 530.) Conditions attached to pardons are things voluntarily to be accepted and performed (*Ex Parte Janes*, 1 Nev. 319), or terms must be served out. Such conditions are not germane to the subject of reduced length of term, which, when served, fully satisfies the law, whatever its length. The result is, power of the governor of this state to commute extended merely to reducing duration of imprisonment and amount of fine, until the legislative session of 1921, which authorized conditional commutation. (R. S. 62-2216.)" (p. 327.)

In the instant case the executive order was made entirely without regard to appellee's wishes, consent or agreement, and the power of the governor of Louisiana to commute extended only to reducing duration of imprisonment. Manifestly, the sentence having been commuted, appellee could not be a fugitive from justice of the demanding state of Louisiana with respect to the crime and sentence in question. It is not claimed appellee is now awaiting trial in the state of Louisiana for some other offense alleged to have been there committed.

Appellants criticize one of the conclusions of the trial court upon which its judgment was based. It is that the surrender of appellee to the federal authorities prior to the completion of his sentence in the state penitentiary of Louisiana constituted a waiver of the right of the state of Louisiana to demand his return to that state. They contend his release from custody and his removal by the federal authorities into Kansas did not constitute a waiver of the right of Louisiana to demand his return. In support of that contention they rely primarily upon our own case, *In re Martin,* 142 Kan. 907, 52 P. 2d 1196, and upon the decisions cited and approved therein, from other jurisdictions. None of those decisions are controlling in the instant case. In view of the detailed analysis of facts, in the instant case, previously made, the reader will readily observe the dissimilarity of facts. Since, however, appellants so strenuously contend the decision in the Martin case is controlling in the instant case, we shall observe one outstanding fact which clearly distinguishes that case from the instant one. While in the Martin case the state of Texas was demanding Martin's return from this state after his federal sentence, imposed in Texas, had been served in the federal penitentiary of this state, that state was demanding Martin's return for trial in Texas upon an alleged offense against the laws of that state, which offense was entirely separate and distinct from the state offense for which Martin previously had been sentenced to the state penitentiary by the state of Texas. In our opinion we said:

"There is no showing that petitioner was pardoned by the governor of Texas previous to his removal to Kansas by the federal authorities; it is claimed only that the mere fact he was tried in the federal court after being convicted in the state court amounted to a waiver to further prosecute him on a pending indictment in the state court of Texas. That result certainly does not follow, for had he been confined in Texas under the federal sentence, upon his release the state authorities could have held him for trial on the indictment on which he had not been tried." (p. 912.)

Appellee concedes he has found no decision squarely in point, but cites various decisions which he believes, at least argumentatively, support the trial court's conclusion that the state of Louisiana waived its right to demand his return. (*In re Hess,* 5 Kan. App. 763; *In re Whittington,* 34 Cal. App. 344; *The People v. Klinger,* 319 Ill. 275; *Ex Parte Youstler,* 40 Okla. Crim. Rep. 273; *State v. Saunders,* 288 Mo. 640.)

In view of our conclusion that the order of the governor of Louisiana was in effect a commutation of sentence, we do not deem it necessary to discuss the question whether, in the absence of commutation of sentence, his release to federal authorities would have constituted a waiver of the right of the state of Louisiana to demand his return. Nor do we deem it necessary to treat. other contentions of appellee advanced in support of the judgment.

The judgment is affirmed.