Jack SHIELDS, Appellant,

v.

Dr. George J. BETO, Director, Texas Department of Corrections, Appellee.

No. 23838.

United States Court of Appeals
Fifth Circuit.

Jan. 10, 1967.

Orville A. Harlan, Houston, Tex., for appellant.

Gilbert J. Pena, Asst. Atty. Gen., Waggoner Carr, Atty. Gen. of Texas, Hawthorne Phillips, First Asst. Atty. Gen., T. B. Wright, Executive Asst. Atty. Gen., Howard M. Fender, Lonny F. Zwiener, Asst. Attys. Gen., Austin, Tex., for appellee.

Before TUTTLE, Chief Judge, and AINSWORTH and DYER, Circuit Judges.

AINSWORTH, Circuit Judge:

This is an appeal by Jack Shields from denial of habeas corpus. Appellant was convicted in Gray County, Texas, for two felonies, on May 18 and 19, 1933, respectively, and sentenced to 10 years' imprisonment in each case to run consecutively. On November 28, 1933, he was convicted in Wheeler County, Texas, for a felony and sentenced to an additional term of 20 years to run consecutively to the first two convictions, a total of 40 years. On December 5, 1934, after serving slightly more than 1 year of his 40-year term, the

Governor of Texas granted Shields a 60-day "furlough." Texas prison officials notified Louisiana authorities of the "furlough" because Shields had escaped from a Louisiana penitentiary prior to the Texas convictions. Instead of taking the furlough, Shields signed a waiver of extradition and began serving time in the Louisiana penitentiary, from which he was paroled on June 2, 1944. Parole supervision was removed on April 7, 1948. Texas did not place a detainer for Shields at the Louisiana penitentiary, and he was released and remained at large until May 12, 1960, when he was convicted in a federal district court in Tennessee and sentenced to 5 years, from which he was paroled on May 12, 1962. He was then transferred to Jasper County, Texas, where, 28 years after he was first extradited by Texas to Louisiana, he was convicted of passing a forged instrument and sentenced to a term of 2 years plus the time not served as of December 5, 1934 on the 1933 convictions in Texas, an additional period of approximately 39 years.[1]

Following the latest Texas conviction Shields applied for a writ of habeas corpus to the Texas Court of Criminal Appeals because of his continued incarceration under the three 1933 Texas convictions. Ex parte Shields, Tex.Cr.App., 1963, 371 S.W.2d 395. Certiorari was denied by the United States Supreme Court, Shields v. Texas, 379 U.S. 860, 85 S.Ct. 119, 13 L.Ed.2d 63 (1964).

In the present petition for habeas corpus Shields alleges that he is entitled to his release and his continued incarceration under the 1933 Texas convictions is in violation of his rights under the due process clause of the Fourteenth Amendment of the United States Constitution.

The question we must decide is whether after more than 28 years of inaction on the part of the State of Texas relative to the unexpired term of Shields's 1933

convictions, he may now on conviction of a new felony in Texas be required to serve the balance of time on these old sentences. Do the circumstances of this case, therefore, offend the constitutional precepts of due process stated in the Fourteenth Amendment?

The due process clause of the Fourteenth Amendment requires that action by a state through any of its agencies must be consistent with the fundamental principles of liberty and justice. Buchalter v. People of the State of New York, 319 U.S. 427, 63 S.Ct. 1129, 87 L. Ed. 1492 (1943). It exacts from the states a conception of fundamental justice. Foster v. People of State of Illinois, 332 U.S. 134, 67 S.Ct. 1716, 91 L.Ed. 1955 (1947).

As far back as 1902, in the case of In re Jennings, 118 F. 479, a federal circuit court in Missouri recognized that delay in execution of a sentence is repugnant to the law.

In Ex parte Bugg, 1912, 163 Mo.App. 44, 145 S.W. 831, the defendant was convicted in two cases involving illegal sale of liquor, and after having served a short time in prison under the first sentence, the court suspended that sentence because of defendant's failing health, and he was released from custody. Nothing was done at the time about the sentence imposed in the second case. Approximately 3 years later he was arrested and imprisoned on the sentence imposed in the second case. The court ordered his release, although recognizing the general rule that absent a statutory provision a jail sentence can be satisfied only by compliance with its terms, and held that delay in imprisonment occasioned by the sentencing court itself could bar enforcement of a criminal judgment. The court said:

"We do not mean to be understood as holding that the lapse of three years or

---

1. The federal district judge in his reasons for judgment stated: "Petitioner was committed to the Texas Department of Corrections to serve a two year sentence from the Jasper County conviction and to serve all the time on his Gray and Wheeler Counties convictions not served as of December 5, 1934, the date of his 'furlough' when he was sent to Louisiana."

any specific time should be sufficient or be required in all cases to bar the enforcement of a judgment similar to this one, but each case should rest upon its own peculiar facts and such course followed as will best promote the ends of justice." (145 S.W. at 833.)

In Thompson v. Bannan, 6 Cir., 1962, 298 F.2d 611, petitioner was surrendered to Illinois authorities by Michigan authorities and upon acquittal in Illinois was extradited and convicted in Michigan. The Sixth Circuit affirmed the district court's denial of habeas corpus because at the time petitioner was surrendered to Illinois the charge in Michigan was still pending and consequently there could have been no implied pardon or commutation of a sentence which had not yet been imposed. However, the court distinguished the case from "those cases where the prisoner was surrendered to a sister state while serving a sentence after conviction." The court said that "A release by the governor under such circumstances is sometimes considered to be in effect a pardon of the remainder of the sentence. Ex parte Guy, 41 Okl.Cr. 1, 269 P. 782. In In re Jones, 154 Kan. 589, 121 P.2d 219, under similar facts it was held to be a commutation of sentence." The Sixth Circuit also said in its opinion:

> "*The surrender to another state while the prisoner is serving a sentence is equivalent to a pardon.* We think implied pardon or commutation of sentence is more descriptive of the legal effect of such a surrender than waiver of jurisdiction. In such a case the judgment of conviction is satisfied and there is no continuing jurisdiction. There is ample justification for such final release as stated by the court in the Rayborn [Jones v. Rayborn, Kentucky, 1962, 346 S.W.2d 743] case." (Emphasis supplied.)

In Jones v. Rayborn, 346 S.W.2d 743, 747, the court disagreed with the state's theory that "the right to pardon or com-

mute sentence is given to the Governor alone and not to lesser officials," a contention made by Texas in the present case. The court said (346 S.W.2d at 747):

> "Therefore, it appears unreasonable to limit the application of these standards to the Governor alone. He is not the State. He is the Chief Executive, but the State may act in many capacities through lesser officials and in turn the acts of many officials other than the Governor may bind the State. And if the Governor may waive a right of the State when he is not attempting to exercise his right to pardon and is acting in another field, we see no reason why other officials of the State should not also bind the State by their official acts."

*Rayborn* differs from the present case in that the prisoner was extradited *against his will* from a state to a federal penitentiary before expiration of his state term and restrained after he had served sufficient time for eligibility for parole under state law. The Kentucky appellate court ordered the prisoner's release, affirming a lower court holding that Kentucky had waived jurisdiction by turning Rayborn over to federal custody before expiration of his state sentence.

In People ex rel. Barrett v. Bartley, 383 Ill. 437, 50 N.E.2d 517, 147 A.L.R. 935 (1943), the court held that where a prisoner was transferred to Wisconsin while imprisoned in Illinois, he could not be required to return to Illinois to serve the balance of the sentence owed to that state and the action of the Governor of Illinois in extraditing him to Wisconsin operated to waive any further jurisdiction over the prisoner.[2]

 Thus we hold that the extraditing of Shields to Louisiana authorities and the release by Texas of the prisoner before expiration of his sentence constituted a waiver of jurisdiction over Shields, especially where the surrender-

---

2. Compare Jones v. Morrow, 154 Kan. 589, 121 P.2d 219 (1942); State ex rel. Shotkin v. Buchanan, Fla.App., 1963, 149 So. 2d 574, 98 A.L.R.2d 683; Smith v. Swope, 9 Cir., 1937, 91 F.2d 260.

ing sovereign (Texas) showed no interest in the return of the prisoner, either by agreement between the sovereigns, by detainer, or any other affirmative action taken by it following his release in Louisiana. A prisoner cannot be required to serve his sentence in installments. White v. Pearlman, 10 Cir., 1930, 42 F.2d 788.

The lack of interest in Shields by the State of Texas from the date he was released to the Louisiana authorities in 1934 until 1962 when again convicted in Texas, a lapse of more than 28 years, was equivalent to a pardon or commutation of his sentence and a waiver of jurisdiction. The Jasper County state judge, therefore, lacked authority to require Shields to complete service of the sentences under the old 1933 convictions, which action constituted a denial of due process under the Fourteenth Amendment to the United States Constitution.

Reversed.