**Sidney R. HERTZ, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–7585.**

Court of Appeals of Alaska.

April 6, 2001.

896

Sidney R. Hertz, Florence, AZ, pro se.

Timothy W. Terrell, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellees.

Before COATS, Chief Judge, STEWART, Judge, and RABINOWITZ, Senior Supreme Court Justice.*

*CORRECTED OPINION*

STEWART, Judge.

The Department of Corrections sent Sidney R. Hertz to a privately operated prison facility in Arizona to serve his sentence for second-degree murder. Hertz objected to this move and filed a superior court action for a declaratory judgment and injunctive relief and for monetary damages "with a writ of habeas corpus incorporated" against the Department of Corrections and several state officials (DOC). The superior court granted DOC's motion for summary disposition of Hertz's claim for habeas corpus and, pursuant to Civil Rule 54(b), entered a final judgment on that claim. Hertz appealed to the supreme court and, on DOC's motion, the supreme court transferred the appeal to this court. Because Hertz did not raise a claim that entitled him to habeas corpus relief, we affirm.

*Facts and proceedings*

In 1984, Hertz was indicted on one count of first-degree murder and, following a jury trial, was convicted of second-degree murder. Superior Court Judge J. Justin Ripley sentenced Hertz to a 40–year term and restricted Hertz's parole eligibility for 20 years. We affirmed Hertz's conviction and sentence on direct appeal.[1] Hertz has also filed several applications for post-conviction relief.[2]

In his complaint, Hertz does not attack his conviction or his sentence nor does he challenge the superior court's personal or subject matter jurisdiction for the underlying criminal case that led to his second-degree murder conviction. Instead, Hertz attacks the constitutionality of his transfer to an out-of-state private facility, the Central Arizona Deten-

tion Center (CADC), DOC's authority to place him at CADC, and the legality of CADC under Arizona law. Hertz also alleges that he is entitled to relief in habeas corpus because DOC waived jurisdiction over him by sending him to the private prison. Hertz asserts that the transfer operates as a commutation of his sentence or a pardon.

Assuming that Hertz could pursue his present claims by prosecuting a writ of habeas corpus, Superior Court Judge Brian C. Shortell concluded that Hertz had not raised a meritorious legal issue after finding that Hertz's pleadings raised no issues of material fact. On the legal issues Hertz did raise, Judge Shortell concluded as follows: DOC did not waive jurisdiction over Hertz by sending him to CADC; AS 33.30.031(a) does not violate the prohibition against ex post facto legislation; DOC did not unconstitutionally delegate its power to incarcerate Hertz; and CADC was not improperly organized under Arizona law.

*Did DOC waive jurisdiction over Hertz by transferring him to a private prison in Arizona?*

■ Hertz claims that he is entitled to an immediate release because the State waived jurisdiction over him when DOC "deported" him to CADC against his will. First, Hertz asserts that DOC is barred under the doctrines of quasi-estoppel and equitable estoppel from asserting jurisdiction over him because it took a contrary position in prior litigation. Second, he asserts that there is no statutory basis for the State to retain jurisdiction over Alaska inmates sent to private prisons out of state. Third, he argues that the common law doctrine of waiver of jurisdiction entitles him to immediate release.[3]

---

* Sitting by assignment made pursuant to Article IV, Section 11 of the Alaska Constitution and Administrative Rule 23(a).

**1.** See *Hertz v. State*, Memorandum Opinion and Judgment No. 1225 (Alaska App., September 10, 1986).

**2.** See *Hertz v. State*, 8 P.3d 1144, 1145 (Alaska App.2000).

**3.** In this appeal, Hertz does not challenge the DOC classification decision that resulted in his transfer to Arizona. In *Brandon v. State, Dep't of Corrections*, 938 P.2d 1029 (Alaska 1997), the Alaska Supreme Court held that decisions to transfer inmates out of state are adjudicative proceedings that implicate inmates' constitutional rights to rehabilitation. See *id.* at 1032–33. Consequently, such administrative decisions are subject to judicial review. See *id.* at 1033. For a discussion of the *Brandon* decision in the context

*Hertz's estoppel claims*

■ Hertz argues that the State is estopped from claiming that it retains jurisdiction over Alaska inmates at CADC because it took an inconsistent position in a September 1995 hearing related to DOC's compliance with the *Cleary*[4] Final Settlement Agreement (FSA). Under the doctrine of quasi-estoppel, a party is barred from changing its position on an issue in later litigation "where circumstances render assertion of a second position unconscionable."[5]

It is apparent from our review of the record that the superior court could reasonably conclude that Hertz had not demonstrated a factual basis for his estoppel argument. Hertz relies on an argument by a state attorney at a hearing by the *Cleary* court that the private prison should not be required to seek DOC's approval before taking any disciplinary action against inmates testifying at the *Cleary* hearing. Superior Court Judge Karen L. Hunt had considered issuing an order imposing that condition on CADC after the housing units of some of the Alaska inmates who were scheduled to testify had been searched. Although Judge Hunt ultimately concluded that the search was not conducted in retaliation for the inmates' decision to testify, she expressed concern about the inmates' perceptions that the search was retaliatory.

The assistant attorney general at the hearing opposed an order requiring CADC to seek approval from the Deputy Commissioner of DOC before it took disciplinary action against these inmates:

Deputy Commissioner of [DOC] doesn't have any involvement in any of these actions even for the Alaska Department of Corrections. That's not his job or his responsibilities. We have a contract with the Corrections Corporation of America.... I think it would—it really handicaps their

ability to conduct the business that they do on a daily basis, and I think it's totally unwarranted.

The attorney also questioned whether the court had the authority to impose that order. Neither the assistant attorney general or the inmates' attorney suggested that DOC had no legal jurisdiction over CADC inmates.

After concluding that the search was not retaliatory, Judge Hunt noted:

The Court does not rule but it is—it notes with great interest the fact that both parties are basically presenting to the court—and a suggestion that, once the ink dried on that contract, those prisoners are under the total control of whoever it is that's running the facility. Neither the State of Alaska through the Department of Corrections nor this Court, through its oversight responsibilities because of the *Cleary* case, can do anything to any decision or put any conditions or requirements on any decision that might be made. I'm sure that's an issue that will be revisited in some detail later.

The assistant attorney general noted that "the court's characterization of our position is not entirely accurate." He then proposed as a compromise that he secure a commitment from CADC to notify DOC of any adverse action against testifying inmates. That information would then be passed on to the inmates' attorney. Judge Hunt directed counsel to discuss that and other alternatives and then added:

I want to note that I understand that any institutional—correctional institution must be able to respond appropriately to inmate behavior. So, I don't want to leave us with the—in the position that we do not also have some concern about making sure that the facility management is not hampered. What we are talking about here is being able to reassure the inmates that ...

of prison privatization see Shymeka L. Hunter, *More Than Just a Private Affair: Is the Practice of Incarcerating Alaska Prisoners in Private Out-of-State Prisons Unconstitutional?* 17 Alaska L.Rev. 319, 337–39 (2000).

4. *Cleary v. Smith*, 3AN–81–5274–CI (Alaska Super., filed Aug. 13, 1981). The superior court continues to monitor compliance with the prison

condition requirements of the 1990 *Cleary* FSA. *See generally Hertz v. Cleary*, 835 P.2d 438, 440 (Alaska 1992).

5. *Power Constructors, Inc. v. Taylor & Hintze*, 960 P.2d 20, 26 (Alaska 1998) (quoting *Jamison v. Consolidated Utilities, Inc.*, 576 P.2d 97, 102 (Alaska 1978)).

there are things in place that will happen if there should be any additional attempts at what they perceive to be retaliation.

When the hearing reconvened, Judge Hunt ordered that CADC, during the next three months, notify DOC within ten days of any adverse action being taken against Alaska inmates at CADC who testified at the *Cleary* hearing.

This dialogue, taken in context, indicates that the parties were not disputing whether the State had jurisdiction over Alaska inmates at CADC. The State was arguing that it was not the Deputy Commissioner's role, contractually or otherwise, to interfere with CADC's day-to-day disciplinary decisions. Judge Hunt did not characterize the State as disclaiming legal jurisdiction over the inmates.

Hertz also attempts to support his position with a March 20, 1995, letter from a DOC employee that stated that DOC asserted that the *Cleary* FSA did not apply to Alaska inmates housed at CADC. But the fact that DOC took the position—before Judge Hunt's contrary order—that the *Cleary* FSA only applied to prisons "owned and operated" by DOC is not an admission that the State had no jurisdiction over Alaska inmates at CADC. Moreover, DOC's original contract with CADC indicates the State's intent to retain jurisdiction over Alaska inmates housed in Arizona. The contract provided that Alaska inmates had the right to seek DOC review of most classification, discipline and grievance decisions and that any decision to forfeit an Alaska inmate's good time rested with DOC. The contract also barred disciplinary action inconsistent with that permitted by Alaska laws or regulations.

From all this, Judge Shortell could reasonably conclude that Hertz had not raised a claim of quasi-estoppel because DOC did not claim in earlier litigation that it had no jurisdiction over inmates placed at CADC. For this same reason, Judge Shortell could reasonably conclude that Hertz had not shown that equitable estoppel applied.[6]

### DOC's statutory authority

Hertz next argues that DOC forfeited its jurisdiction over him by transferring him to CADC without providing for an agency or jurisdictional relationship with CADC. He argues that the State relinquished jurisdiction over prisoners transferred to private out-of-state prisons when the legislature repealed AS 33.30.060(b).[7]

In 1985, the legislature enacted a comprehensive update of Alaska's laws on correctional facilities.[8] Among the provisions eliminated was subsection AS 33.30.060(b), which had expressly provided that Alaska retained jurisdiction over inmates housed out of state.[9] However, because the 1985 statutes did not permit DOC to transfer inmates to private prisons out of state, there was no need to "retain jurisdiction" in those circumstances.[10]

---

**6.** *See Dressel v. Weeks*, 779 P.2d 324, 329 (Alaska 1989) (equitable estoppel requires "the assertion of a position by conduct or word, reasonable reliance thereon by another party, and resulting prejudice") (quoting *Jamison*, 576 P.2d at 102).

**7.** *See* former AS 33.30.060(b); ch. 10, § 133, SLA 1960, which provided:

> An authority, receiving physical custody for the purpose of incarceration of a person sentenced by a court under the terms of an agreement made under this section, shall be considered as acting solely as agent of this state. *This state retains jurisdiction over a person incarcerated in an institution of another state, the United States, or a political subdivision of this state.*
>
> Emphasis added.

**8.** *See* Commentary and Sectional Analysis for the 1985 Amendments to Alaska's Laws on Correctional Facilities and the Imprisonment and Reha-

bilitation of Offenders, Committee Substitute for House Bill 114 (HESS), House Journal Supp. No. 35 at 1 (March 25, 1985).

**9.** *See Dwyer v. State*, 449 P.2d 282, 283 (Alaska 1969).

**10.** Former AS 33.30.060 (1985) provided that:

> The commissioner shall determine the availability of state prison facilities suitable for the detention and confinement of persons held under authority of state law. If the commissioner determines that suitable state prison facilities are not available, the commissioner may enter into an agreement with a public agency to provide necessary facilities. Correctional facilities provided through agreement may be in this state or in another state. The commissioner may not enter into an agreement with an agency un-

As early as 1985, the commissioner of DOC voiced concern that the legislature's limitations on housing inmates out of state might cause problems if DOC was not given the funds to build additional prison facilities.[11] In 1992, to address these prison crowding concerns, AS 33.30.060 (renumbered AS 33.30.031) was amended to give DOC more flexibility to house inmates outside Alaska.[12] The statute now provides that Alaska inmates may be sent to private out-of-state prisons if the commissioner finds that:

> (1) there is no other reasonable alternative for detention in the state; and (2) the agreement is necessary because of health or security considerations involving a particular prisoner or class of prisoners, or because an emergency of prisoner overcrowding is imminent.[13]

Hertz relies on this statutory history to argue that the State has waived jurisdiction over him. Hertz contends that because AS 33.30.060(b) has been repealed, the State has no statutory basis to assert jurisdiction over him in Arizona. Although Alaska retains jurisdiction over inmates housed in out-of-state public facilities under the Interstate Corrections Compact (ICC)[14] and the Western Interstate Corrections Compact (WICC),[15] those interstate compacts do not bind private prisons. Furthermore, the con-

tract between DOC and CADC provides that CADC is an independent contractor, not an agent of the State. Hertz relies on these facts to argue that DOC effectively pardoned him by sending him to CADC because the State has not retained jurisdiction over him by statute or by creating an agency relationship with CADC.

When the wording of a statute is unclear or ambiguous, this court looks to legislative history and accepted rules of statutory construction to interpret the statute.[16] The legislature's intent to retain jurisdiction over Alaska inmates serving Alaska sentences is clear. As the State points out, Alaska courts have long recognized that the State retains jurisdiction over inmates transferred to foreign jurisdictions to serve sentences for crimes committed in this state.[17] Initially, the legislature did not permit DOC to contract with private out-of-state facilities to house prisoners,[18] but it did so when the State was faced with prison overcrowding.[19] The legislative history of AS 33.30.031 is devoid of any indication that the legislature intended to retain jurisdiction over prisoners sent to out-of-state public prisons while surrendering jurisdiction over inmates housed in private facilities. The contract between DOC and CADC reflects this understanding

---

able to provide a degree of custody, care, and discipline similar to that required by the laws of this state.
Former AS 33.30.062(a) (1985) provided that: The commissioner may enter into an agreement with a privately operated correctional facility, but only if the facility is located in the state and if the purpose of the agreement is to involve prisoners in a work or rehabilitation furlough program established under this chapter, to provide necessary facilities under AS 33.30.282—33.30.288 [correctional restitution centers], or to confine prisoners convicted of a misdemeanor.....

**11.** *See* Committee Minutes, House Judiciary Standing Committee hearing on H.B. 114 (April 17, 1986).

**12.** *See* Committee Minutes, House Finance Committee hearing on H.B. 596 (May 14, 1992).

**13.** AS 33.30.031.

**14.** *See* former AS 33.36.040 (1986) (now AS 33.36.010).

**15.** *See* former AS 33.36.100 (1986) (now AS 33.36.060).

**16.** *See Brant v. State*, 992 P.2d 590, 593 (Alaska App.1999) (Mannheimer, J., concurring); *see also Romann v. State, Dep't of Transportation and Public Facilities*, 991 P.2d 186, 190–91 (Alaska 1999) (quoting *State v. Alex*, 646 P.2d 203, 208–09 n. 4 (Alaska 1982) ("[S]ince words are necessarily inexact and ambiguity is a relative concept, we ... turn to the legislative history, mindful that the plainer the language, the more convincing the contrary legislative history must be.")).

**17.** *See Donnelly v. State*, 516 P.2d 396, 402 (Alaska 1973); *Dwyer*, 449 P.2d at 282–84; *Application of House*, 352 P.2d 131, 134–36 (Alaska 1960).

**18.** *See* former AS 33.30.062(a) (1985), *supra*, note 9.

**19.** *See* AS 33.30.031(a) (1986).

of AS 33.30.031:[20] DOC retains authority over all significant decisions involving Alaska inmates housed at CADC.[21] We agree with Judge Shortell that the State has not waived jurisdiction over Hertz by sending him to Arizona.

### Hertz's common law claim

■ Hertz next argues that DOC waived its jurisdiction over him by transferring him to a private corporation against his will and prior to the expiration of his sentence. He relies primarily on *Shields v. Beto*,[22] a 1967 Fifth Circuit case. In 1933, Shields was sentenced to 40 years in Texas for the commission of three felonies.[23] After serving slightly more than 1 year of his Texas sentence, Shields was extradited to Louisiana to complete a jail term there (Shields had escaped from a Louisiana penitentiary before his Texas convictions).[24] Texas filed no detainer and, in 1944, Shields was released on parole in Louisiana. Eighteen years after his release on parole and twenty-eight years after his extradition to Louisiana, Texas sought to compel Shields to serve the remainder of his Texas sentence.[25] The Fifth Circuit held that Texas's failure to take any action for twenty-eight years to reacquire jurisdiction of Shields amounted to a pardon.[26]

*Shields* is easily distinguished from the circumstances of this case. First, Texas had transferred Shields to Louisiana to finish serving his Louisiana sentence, not to continue serving his Texas sentence. Second, Texas took no action to assert its jurisdiction over Shields until years after he was released on parole in Louisiana. Hertz, by contrast, has been serving his Alaska sentence without interruption. Moreover, while Hertz cites *Shields* for the principle that DOC "legally waived jurisdiction over Hertz by deporting him to a foreign sovereignty [sic] prior to the expiration of his sentence," a later Fifth Circuit case interpreting *Shields* concluded that a state waives jurisdiction by transferring an inmate to another jurisdiction before the expiration of his sentence only where its action is "so affirmatively wrong or its inaction so grossly negligent that it would be unequivocally inconsistent with 'fundamental principles of liberty and justice' to require a legal sentence to be served in the aftermath of such action or inaction."[27] Applying this standard, two other federal circuits have found that delays as long as seven years in requiring an individual to finish serving an unexpired sentence did not amount to a waiver of jurisdiction by the government.[28]

Hertz cites several other cases to argue that the legislature's failure to expressly pro-

20. *See Keane v. Local Boundary Comm'n*, 893 P.2d 1239, 1247 (Alaska 1995) (quoting Norman J. Singer, 2B *Sutherland Statutes and Statutory Construction*, § 49.03 (5th ed. 1992)) ("A 'contemporaneous and practical interpretation of a statute by the executive officer[ ] charged with its administration and enforcement ... constitutes an invaluable aid in determining the meaning of a doubtful statute.' ").

21. *See* Agreement Between State of Alaska and Corrections Corporation of America, Inc., ASPS #99–001 (June 29, 1998) § 3.4 and § 4.26 (CADC will relinquish physical custody on demand of State); § 3.5 (CADC must obtain written pre-approval of State prior to transferring prisoners to other contract facilities); § 4.1 and § 4.41 (CADC must comply with *Cleary* FSA); § 4.6(J) (CADC will cooperate with State parole process); § 4.21 (CADC disciplinary decisions may be appealed to DOC); § 4.23 (final decision on award or forfeiture of good time rests with State); § 4.29 (CADC will hold hearings on request of State); § 4.33 (State will defend any post-conviction action); § 4.34 (State may inspect CADC at all reasonable times to ensure it

maintains standards compatible with those of the State).

22. 370 F.2d 1003 (5th Cir.1967).

23. *See id.*

24. *See id.* at 1004.

25. *See id.*

26. *See id.* at 1006.

27. *Piper v. Estelle*, 485 F.2d 245, 246 (5th Cir. 1973).

28. *See United States v. Martinez*, 837 F.2d 861, 864–65 (9th Cir.1988) (because of clerical error, more than seven years lapsed between federal conviction and order to serve sentence); *Mathes v. Pierpont*, 725 F.2d 77, 78–79 (8th Cir.1984) (for unexplained reasons, Oklahoma released detainer on escapee while he was serving federal sentence and then waited seven years, after inmate had been released on parole, to rearrest him on state charge).

vide for jurisdiction over inmates housed at CADC commutes his sentence.[29] But in the cases cited by Hertz, the court concluded that the state that transferred the inmate to another jurisdiction to serve a sentence imposed by that other jurisdiction had failed to retain authority to retake that inmate once the sentence was completed.[30] Because Hertz was sent to Arizona to serve his Alaska sentence, these cases are inapposite.

Modern authorities that have considered the question presented here—whether a state waives jurisdiction over an inmate by transferring him to a private out-of-state prison, entitling the inmate to unconditional release—have uniformly rejected that claim, recognizing that *Shields* and modern waiver of jurisdiction cases do not warrant relief in these circumstances.[31]

*Does AS 33.30.031(a) violate the prohibition against ex post facto laws?*

 Hertz argues that because he committed his crime in 1983,[32] before AS 33.30.031(a) was amended to permit DOC to contract with private out-of-state prisons, applying that law to him violates the constitutional prohibition against ex post facto laws by altering the legal consequences of his crime. But the constitutional prohibitions on ex post facto laws [33] prohibit "the retrospective application of laws that 'alter the definition of crimes or increase the punishment for criminal acts.'" [34] Alaska Statute 33.30.031(a) did not punish Hertz for an act previously committed, which was innocent when done, nor make the punishment for his

crime more burdensome, nor deprive him of any defense that was available when he killed his victim.[35] The fact that a statute alters a convicted person's circumstances to his or her disadvantage does not show an ex post facto violation.[36]

Hertz's sentence was not increased when he was placed at CADC. He is still serving the 40–year term imposed by the superior court. We agree with Judge Shortell that Hertz did not show an ex post facto violation.

*Has DOC improperly delegated its power to imprison Hertz to CADC?*

Hertz next argues that DOC has impermissibly delegated core governmental powers to a private agency by contracting with CADC to house Alaska inmates. Hertz concedes that the delegation of governmental power to private parties is permissible under Alaska law. But he argues that the delegation is improper in this case because CADC is an independent contractor not subject to the State's control and management and because delegating governmental power to a private corporation in Arizona is an illegal attempt to apply Alaska law extra-territorially.

The State agrees that incarceration is a governmental power. But it argues that DOC's delegation of that power to CADC is constitutionally permissible because the delegation is authorized by statute, guided by standards, and falls within a long tradition in Alaska of assigning the task of imprisonment

---

**29.** *See Ex parte Drake*, 233 P.2d 931, 935–36 (Cal.App.1951), *opinion vacated*, 38 Cal.2d 195, 238 P.2d 566 (1951); *Jones v. Morrow*, 154 Kan. 589, 121 P.2d 219, 223 (Kan.942); *Ex parte Guy*, 41 Okla.Crim. 1, 269 P. 782, 784–85 (1928).

**30.** *See Drake*, 233 P.2d at 931–32, 935–36; *Jones*, 121 P.2d at 222–24; *Guy*, 269 P. at 782–83, 784–85.

**31.** *See Evans v. Holm*, 114 F.Supp.2d 706, 709–13 (W.D.Tenn.2000); *Arnold v. Colorado Dep't of Corrections*, 978 P.2d 149, 150, 154 (Colo.App. 1999); *cf. Blango v. Thornburgh*, 942 F.2d 1487, 1491 (10th Cir.1991); *Venable v. Thornburgh*, 766 F.Supp. 1012, 1014 (D.Kan.1991) (rejecting argument that state lost jurisdiction by transferring inmate to out-of-state federal prison to serve term imposed by sending state).

**32.** Although Hertz relies on the date he was convicted (1984), the date he committed his offense is the relevant date for ex post facto analysis. *See Parker v. State*, 667 P.2d 1272, 1274 (Alaska App.1983).

**33.** *See* U.S. Const. art. I, §§ 9, 10; Alaska Const. art. I, § 15.

**34.** *Amin v. State*, 939 P.2d 413, 416 (Alaska App. 1997) (quoting *Collins v. Youngblood*, 497 U.S. 37, 43, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990)).

**35.** *See Collins*, 497 U.S. at 42, 110 S.Ct. 2715.

**36.** *See State v. Anthony*, 816 P.2d 1377, 1378 (Alaska 1991).

to foreign jurisdictions and private halfway houses.

■ Hertz first argues that DOC has impermissibly delegated core governmental powers to a private corporation without adequate standards to guide the exercise of that power. Alaska Statute 33.30.031(a) permits DOC to contract with private prisons only where necessary to address prisoner health and security considerations or the emergency of prison overcrowding. Moreover, private prisons must "provide a degree of custody, care and discipline similar to that required by the laws of this state." [37] This statutory authorization "sufficiently marks the field within which the administrator is to act" [38] by requiring that inmates are housed out of state in conditions similar to those required by Alaska prison management laws,[39] DOC regulations [40] and the *Cleary* FSA.[41]

DOC's contract with CADC incorporates this legislative directive by requiring that CADC adopt DOC policies and procedures and comply with applicable federal and state laws, corrections industry standards, and the *Cleary* FSA. These required procedures cover all significant aspects of inmate life, including removal of inmates from work-release; treatment or other programs; administrative segregation; maximum custody housing; counseling and mental health; medical and dental care; prisoner grievances; visitation; prisoner discipline; classification procedures; hearing advisors; media and public relations; food service standards; and arts and crafts programs. CADC can revise these policies only with the consent of DOC.

The contract also defines in detail required disciplinary processes, limits on the use of force, and the award and forfeiture of good time. CADC can only impose discipline for offenses listed in DOC regulations and must follow the hearing process imposed by the *Cleary* FSA. An inmate must be provided a copy of a disciplinary report within five working days after the infraction and is entitled to a tape-recorded hearing and the assistance of a hearing advisor. All disciplinary decisions may be appealed to the CADC Warden and to the Alaska Director of Institutions, and execution of punishment is stayed pending these appeals. Once the administrative review process is complete, prisoners can appeal decisions implicating fundamental constitutional rights to the Alaska Superior Court.[42] Although CADC is responsible for reporting on the behavior of prisoners, all final decisions to award or forfeit good time rest with DOC.

Similarly, DOC has ultimate control over prisoner classification decisions, as well as prisoner grievances directed at CADC's Warden or Assistant Warden. The State can terminate its contract with CADC in the event of breach or, at its convenience and without cause, can exercise a partial takeover of any service CADC is obligated to perform under the contract. And, as the State points out, inmates have greater opportunities to sue CADC employees for violations of federal constitutional rights because CADC employees do not enjoy the qualified immunity accorded state officials to damages suits under 42 U.S.C. § 1983.[43]

Because the legislature has tailored AS 33.30.031 to address specific health, safety and emergency overcrowding issues, and because DOC has retained ultimate authority over prisoner discipline and the award and forfeiture of good time, we conclude that the delegation of the responsibility to house pris-

---

**37.** AS 33.30.031(a); *see also Anchorage v. Anchorage Police Dep't Employees Ass'n,* 839 P.2d at 1080, 1088 (Alaska 1992) (legislative expression of intent provided "standard" limiting delegatee's discretion).

**38.** *State v. Fairbanks North Star Borough,* 736 P.2d 1140, 1143 (Alaska 1987) (quoting *Synar v. United States,* 626 F.Supp. 1374, 1383–89 (D.D.C.1986)).

**39.** AS 33.30.

**40.** 22 AAC.

**41.** Cf. *Tulsa County Deputy Sheriff's Fraternal Order of Police v. Board of County Comm'rs of Tulsa County,* 995 P.2d 1124, 1129 (Okla.2000) (finding that legislature did not impermissibly delegate rule-making authority because county jails were subjected to the same standards whether they were operated by a county or private company).

**42.** *See* AS 33.30.295.

**43.** *See Richardson v. McKnight,* 521 U.S. 399, 412, 117 S.Ct. 2100, 138 L.Ed.2d 540 (1997).

oners is not an unconstitutional delegation of authority.

■ Hertz also argues that DOC's delegation of authority to independent contractors like CADC and its employees violates AS 44.17.010 [44] and AS 44.17.040,[45] which authorize the executive officer of each Alaska department to assign functions to subordinate officers and employees. Hertz argues that these statutes do not permit delegation of governmental functions to an independent contractor like CADC that is not "subject to the state's control and management." But AS 33.30.031(a) was enacted more recently and specifically authorizes DOC to contract with private prisons out of state.[46] "Generally, 'a more specific statute governs over an otherwise applicable general statute.' "[47] In any event, the key concern of these statutes is that department heads, in delegating functions and appointing staff, "maintain appropriate supervision, direction, and control" over their subordinates.[48] DOC's oversight of CADC operations and finances is more than sufficient to meet this standard.

■ Hertz also argues that Alaska has exceeded its authority in contracting to house prisoners at CADC because Alaska cannot impose its laws on Arizona. To support his claim, Hertz relies on *Healy v. Beer Institute*,[49] which stands for the general principle that a state exceeds its authority with legislation that directly controls commerce that occurs wholly outside its borders.[50]

That case is inapposite. The limitation on extra-territorial laws in *Healy* and other cases construing the Commerce Clause's limitation on the authority of states to burden interstate commerce is aimed at preventing economic protectionism.[51] The prohibition reaches laws that have a discriminatory effect on out-of-state economic interests where the state cannot show a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives.[52] Hertz has failed to show how AS 33.30.031(a) discriminates against interstate commerce. Also, Hertz has not offered any evidence to suggest that Arizona has refused to recognize Alaska's jurisdiction over its inmates at CADC.

*The relevance of CADC's status under Arizona law*

■ Finally, Hertz claims that CADC is not properly recognized as a private prison under Arizona law. Hertz argues that these claims are relevant to his waiver of jurisdiction claim. But even if CADC were operating illegally in Arizona, we conclude that this fact has no bearing on the determination of whether Alaska waived jurisdiction over Hertz by sending him to CADC.

*Conclusion*

The judgment of the superior court is AFFIRMED.

MANNHEIMER, Judge, not participating.

---

44. AS 44.17.010 provides:

 The principal executive officer of each state department may assign the functions vested in the department to subordinate officers and employees.

45. AS 44.17.040 provides:

 The principal executive officer of each department may establish necessary subordinate positions, make appointments to these positions, and remove persons appointed within the limitations of appropriations and subject to state personnel laws. Each person appointed to a subordinate position established by the principal executive officer is under the supervision, direction, and control of the officer.

46. AS 44.10.010 and AS 44.10.040 were enacted in 1959. *See* ch. 64, §§ 3, 5, SLA 1959.

47. *O'Callaghan v. Rue*, 996 P.2d 88, 99 n. 58 (Alaska 2000) (quoting *Jenkins v. Daniels*, 751 P.2d 19, 22 (Alaska 1988)).

48. *State v. Breeze*, 873 P.2d 627, 633 (Alaska App.1994).

49. 491 U.S. 324, 109 S.Ct. 2491, 105 L.Ed.2d 275 (1989).

50. *See id.* at 336–37, 109 S.Ct. 2491.

51. *See New Energy Co. of Indiana v. Limbach*, 486 U.S. 269, 273–74, 108 S.Ct. 1803, 100 L.Ed.2d 302 (1988).

52. *See Oregon Waste Systems, Inc. v. Department of Envtl. Quality*, 511 U.S. 93, 93–94, 114 S.Ct. 1345, 128 L.Ed.2d 13 (1994).